KENNETH S. GAINES (SBN 049045)
ken@gaineslawfirm.com
DANIEL F. GAINES (SBN 251488)
daniel@gaineslawfirm.com
ALEX P. KATOFSKY (SBN 202754)
alex@gaineslawfirm.com
GAINES & GAINES, APLC
21550 Oxnard Street, Suite 980
Woodland Hills, CA 91367
Telephone: (818) 703-8985
Facsimile: (818) 703-8984

Attorneys for Plaintiff
ANGELA CHURCH and Proposed Class Counsel

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| ANGELA CHURCH, on behalf of herself and all others similarly situated, and on behalf of the general public, <br><br> Plaintiffs, <br><br> v. <br><br> GAMESTOP, INC., a Minnesota corporation; GAMESTOP CORP.; a Delaware corporation; and DOES 1 through 50, inclusive, <br><br> Defendants. | CASE NO.: ED CV11-00132 GAF (RZx) <br><br> **NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** <br><br> **DATE:** October 17, 2011 <br> **TIME:** 9:30 A.M. <br> **COURTROOM:** 740 <br> **JUDGE:** Hon. Gary A. Feess |

1   **TO THE COURT AND TO ALL PARTIES:**

2       **PLEASE TAKE NOTICE** that on October 17, 2011 at 9:30 A.M., in

3   Courtroom 740 of the above-entitled Court, located at 255 East Temple Street, Los

4   Angeles, California 90012, Plaintiff Angela Church will, and hereby does, move this

5   Court for an order (1) preliminarily approving the proposed class action settlement in

6   the above-captioned case, (2) provisionally certifying a pursuant to Fed. R. Civ. P.

7   23, (3) provisionally approving the appointment of Plaintiff Angela Church as Class

8   Representative, (4) provisionally approving the appointment of Kenneth S. Gaines,

9   Esq., Daniel F. Gaines, Esq., and Alex P. Katofsky, Esq. of Gaines & Gaines, APLC

10  as Class Counsel, (5) provisionally approving appointment of ILYM Group, Inc. as

11  settlement administrator, (6) approving and directing distribution of notice to the

12  settlement class, and (7) setting a final fairness and approval hearing.

13      The basis for this unopposed Motion is that the proposed settlement is fair,

14  adequate, and reasonable and in the best interests of the settlement class as a whole,

15  and that the procedures proposed by the Parties are adequate to ensure the

16  opportunity of class members to participate in, opt out of, or object to the settlement.

17      This motion will be based on this Notice and accompanying Memorandum of

18  Points and Authorities, the Declaration of Kenneth S. Gaines, the Joint Stipulation of

19  Settlement and Release (including exhibits), all filed herewith, and on such further

20  evidence and argument as may be presented at the hearing.

21  Dated:  September 1, 2011            Respectfully Submitted,
22
23                                      GAINES & GAINES, APLC
24
25                                      By:   /s/ Kenneth S. Gaines
26                                            Kenneth S. Gaines, Esq.
                                              Daniel F. Gaines, Esq.
27                                            Alex P. Katofsky, Esq.
                                              Attorneys for Plaintiff Angela Church
28                                            and Proposed Class Counsel

**NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................. 1

II.  FACTUAL BACKGROUND ................................................. 2

III.  SUMMARY OF SETTLEMENT TERMS ............................... 3

    A.  The Settlement Class and Subclass ................................... 3

    B.  Settlement Consideration ................................................. 4

        1.  Payment to Class Members ...................................... 4

        2.  Payment to the LWDA Pursuant to PAGA ................ 4

        3.  Payment of Claims Administration Expenses ............ 5

        4.  Attorneys' Fees and Costs to Class Counsel ............. 5

        5.  Payment to the Class Representative ....................... 5

        6.  Non-Monetary Settlement Terms .............................. 6

    C.  The Release by Plaintiff and Class Members ..................... 6

IV.  PRELIMINARY SETTLEMENT APPROVAL PROCESS ........... 7

    A.  Provisional Certification of the Settlement Class ................ 8

    B.  Settlement Administration Timeline .................................. 8

V.  PRELIMINARY APPROVAL OF THE SETTLEMENT IS
APPROPRIATE ............................................................... 10

    A.  The Terms of the Proposed Settlement Provide Reasonable
Compensation for Plaintiff's and Class Members' Damages .............. 11

        1.  Plaintiff's Claims for Improper Paycards ................... 12

        2.  Plaintiff's Claims for Suitable Seating ...................... 13

        3.  Plaintiff and Class Members Faced Substantial Risk Opposing
Defendants' Anticipated Motion to Compel Individual Arbitration
................................................................................. 14

        4.  Plaintiff and Class Members Faced Substantial Risk in Prevailing
on the Merits of Their Claims ..................................... 15

        5.  Plaintiff and Class Members Faced Substantial Risk in Obtaining
a Substantial Judgment at Trial ................................... 16

        6.  Two Previous Class Action Settlements May Have Been Found to
Release Class Members' Claims Through June 21, 2010 ......... 17

NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT

7.    The Value of the Settlement's Injunctive Relief is Substantial .. 17

B.    The Settlement is the Product of Serious, Arm's-Length, Informed Negotiations and There are no Indications Present to Doubt its Fairness .................................................................................................. 18

VI.    PROVISIONAL CLASS CERTIFICATION IS APPROPRIATE ................. 19

A.    FRCP 23(a) Requirements For Class Certification Are Met ............... 19

1.    Numerosity ........................................................................ 20

2.    Commonality ..................................................................... 20

3.    Typicality .......................................................................... 21

4.    Adequacy of Representation............................................. 21

B.    FRCP 23(b)(3) Requirements for Class Certification are Met ............ 22

1.    Predominance .................................................................... 22

2.    Superiority ......................................................................... 23

VII.    THE PROPOSED CLASS NOTICE IS APPROPRIATE ............................. 24

A.    The Class Notice Satisfies Due Process.............................................. 24

B.    The Proposed Notice is Accurate and Informative ............................. 24

VIII.    A FINAL APPROVAL HEARING SHOULD BE SCHEDULED ................. 25

IX.    CONCLUSION ............................................................................................ 25

**NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF AUTHORITIES

## Federal Statutes

28 U.S.C. § 1332(d) ..............................................................................................3

Fed. R. Civ. P. 23 ...............................................................................................25

## California Statutes and Regulations

California Business and Professions Code § 17200 ..............................................6, 12

California Civil Code § 1542 .................................................................................7

California Labor Code § 212 ........................................................................*passim*

California Labor Code § 1198 ......................................................................*passim*

California Labor Code § 2699 ......................................................................*passim*

IWC Wage Order 7-2001 ...........................................................................*passim*

## Federal Cases

*Acosta v. Trans Union LLC*,
    243 F.R.D. 377 (C.D. Cal. 2007) .................................................................10

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ....................................................................................22

*AT&T Mobility, LLC v. Concepcion*,
    131 S. Ct. 1740 (2011) ................................................................................14

*Barrera v. GameStop Corp., et. al.*,
    (C.D. Cal., No. CV09-1399 ODW (Ex)) .......................................................17

*Class Plaintiffs v. City of Seattle*,
    955 F. 2d 1268 (9th Cir. 1992) .......................................................................8

*Cotton v. Hinton*,
    559 F.2d 1326 (5th Cir. 1977) ......................................................................18

*Cox v. American Cast Iron Pipe*,
   784 F.2d 1546 (11th Cir. 1986) ................................................................20, 23

*Fleming v. Dollar Tree Stores, Inc.*,
   2006 WL 2975581 (N.D. Cal. Sept. 15, 2006, No. C06-03409 MJJ) ............ 16

*Hanlon v. Chrysler Corp.*,
   150 F. 3d 1011 (9th Cir. 1998) .................................................20, 21, 22, 23

*Gen. Tel. Co. of the SW v. Falcon*,
   12 S.Ct. 2364, 457 U.S. 147 (1982) .............................................................. 21

*Griffin v. Carlin*,
   755 F.2d 1516 (11th Cir. 1985) ...................................................................... 21

*In re Corrugated Container Antitrust Litig.*,
   643 F.2d 195 (5th Cir. 1981) .......................................................................... 11

*In re Prudential Securities, Inc.*,
   163 F.R.D. 200 (S.D.N.Y. 1995) .................................................................... 10

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) ........................................................... 7

*In re Traffic Exec. Ass'n*,
   627 F.2d 631 (2d Cir. 1980) ........................................................................... 10

*Martens v. Smith Barney*,
   181 F.R.D. 243 (S.D.N.Y. 1998) .................................................................... 18

*Molski v. Gleich*,
   318 F.3d 937 (9th Cir. 2003) .......................................................................... 19

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ..................................................................... 7

*Neuvenheim v. GameStop Corp., et. al.*,
   (C.D. Cal., No. CV09-6799 ODW (Ex)) ........................................................ 17

NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT

*Officers for Justice v. Civ. Serv. Comm'n of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) ........................................................... 18

*Quevedo v. Macy's, Inc., et. al.*,
    (C.D. Cal. June 16, 2011, No. CV09-1522 GAF (MANx)) ........................... 14

*Schwartz v. Dallas Cowboys Football Club, Ltd.*,
    157 F. Supp. 2d 561 (E.D. Pa. 2001) ................................................. 7

*Solis v. The Regis Corporation*,
    612 F.Supp.2d 1085 (N.D.Cal.2007) ................................................. 16

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ........................................................... 10

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) ........................................................... 10

*Welmer v. Syntex*,
    117 F.R.D. 641 (N.D. Cal. 1987) ..................................................... 21

*Weston v. FedEx Office and Print Services, Inc.*,
    707 F.Supp.2d 1074 (2010) ............................................................. 16

*Yamamoto v. Omiya*,
    564 F.2d 1319 (9th Cir. 1977) ......................................................... 10

## California Cases

*Amaral v. Cintas Corp. No. 2*,
    163 Cal.App.4th 1157 (2008) ........................................................... 16

*Bright v. 99 Cents Only Stores*,
    189 Cal.App.4th 1472 (2010) ........................................................... 13

*Brown v. Ralphs Grocery Company, et. al.*,
    197 Cal.App.4th 489 (2011) ........................................................... 14

*Caliber Bodyworks, Inc. v. Superior Court*,
    134 Cal.App.4th 365 (2005) ........................................................... 16

NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

*Home Depot U.S.A., Inc. v. Sup. Ct.*,
    191 Cal.App.4th 201 (2010) ........................................................... 14

### Treatises

2 Alba Conte & Herbert B. Newberg,
    *Newberg on Class Actions*, § 8.21 (2d ed. 1985) ............................. 25

2 Alba Conte & Herbert B. Newberg,
    *Newberg on Class Actions*, § 8.39 (2d ed. 1985) ............................. 25

4 Alba Conte & Herbert B. Newberg,
    *Newberg on Class Actions*, § 11.22 (4th ed. 2002) ........................... 8

4 Alba Conte & Herbert B. Newberg,
    *Newberg on Class Actions*, § 11.25 (4th ed. 2002) .................... 8, 10

4 Alba Conte & Herbert B. Newberg,
    *Newberg on Class Actions*, § 11.26 (4th ed. 2002) .................... 8, 19

4 Alba Conte & Herbert B. Newberg,
    *Newberg on Class Actions*, § 11.41 (4th ed. 2002) .................. 10, 11

Manual for Complex Litigation (Third) § 30.41 (1995) ...................... 7, 8

Manual for Complex Litigation (Third) § 30.211 (1995) ...................... 25

Manual for Complex Litigation (Third) § 30.212 (1995) ...................... 25

Manual for Complex Litigation (Fourth) § 21.62 (2004) ...................... 71

**NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

1  **I.    INTRODUCTION**

2          Plaintiff Angela Church ("Plaintiff" or "Church") on behalf of herself and

3  others similarly situated, and Defendants GameStop, Inc. and GameStop Corp.

4  (collectively "GameStop" or "Defendants") ("Plaintiff and "Defendants" are

5  collectively referred to as the "Parties") have reached a resolution of Plaintiff's

6  claims in this Action and seek preliminary approval of their proposed class action

7  settlement.  Subject to Court approval, Plaintiff has settled her and class members'

8  claims against Defendants for up to $750,000 (which includes all settlement

9  payments, a payment to the LWDA, the costs of settlement administration, Class

10  Counsel's attorneys' fees and costs, and the named Plaintiff's service payment and

11  general release payment).

12          This proposed settlement ("Settlement")[1] resolves all of the Named Plaintiff's

13  and Settlement Class Members' claims asserted in the Action against GameStop.

14          The proposed Settlement satisfies all of the criteria for preliminary settlement

15  approval under Federal law, and is fair, reasonable, and adequate.  Accordingly, the

16  Parties request that the Court:

17      1.  Provisionally certify the proposed Settlement Class for settlement purposes,

18      2.  Grant preliminary approval of the proposed Settlement;

19      3.  Approve the proposed notice program and the notice form and claim form

20              proposed by the Parties;

21      4.  Confirm the appointment of Plaintiff Angela Church as Class Representative;

22      5.  Confirm the appointment of Kenneth S. Gaines, Daniel F. Gaines, and Alex P.

23              Katofsky of Gaines & Gaines, APLC as Settlement Class Counsel;

24

25

26

27  _____
[1] The Parties' Joint Stipulation of Settlement and Release is attached to the

28  Declaration of Kenneth S. Gaines, submitted herewith, as Exhibit "A."

**NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

6. Confirm the appointment of ILYM Group, Inc. as Settlement Administrator (with the Parties reserving the right to name a new administrator by mutual agreement and Court approval);

7. Set deadlines for mailing Settlement Documents and for submitting a claim, opting out or objecting to the Settlement; and

8. Schedule a final fairness hearing.

## II.   FACTUAL BACKGROUND

Plaintiff and Class Members are current and former employees of GameStop in the State of California; GameStop is a video game retailer that operates retail stores nationwide, including more than 400 in California.   Plaintiff was employed by GameStop at one of its Southern California retail stores through 2010.  Declaration of Kenneth S. Gaines ("Gaines Decl.") at ¶ 7.

Plaintiff filed her complaint on December 15, 2010, alleging two claims stemming from:

1) GameStop's alleged failure to issue its employees wages by an instrument payable on demand, without discount, at a California location, in violation of *Labor Code* § 212.   Plaintiff contends that GameStop issued its employees wages by Comdata "paycards" through which they were forced to incur check cashing and ATM fees to obtain their wages if they did not have their own bank account.  Gaines Decl. at ¶ 8.

2) GameStop's alleged failure to provide its employees with suitable seating during the course of their employment, in violation of *Labor Code* § 1198 and IWC Wage Order 7-2001, § 14.   Plaintiff contends GameStop could have provided its employees with seats or stools while working at store registers, but failed to do so in contravention of established California law.  Gaines Decl. at ¶ 9.

The primary relief Plaintiff seeks for these claims is civil penalties pursuant to *Labor Code* § 2699, the Labor Code Private Attorneys General Act of 2004 ("PAGA") and injunctive relief.  Plaintiff also seeks damages for and restitution of

check cashing and ATM fees for GameStop's alleged violation of *Labor Code* § 212. Gaines Decl. at ¶ 10.

On January 7, 2011, Plaintiff filed a First Amended Complaint ("FAC"), adding claims for penalties pursuant to PAGA following her compliance with the administrative requirements set forth in *Labor Code* § 2699.3. Defendants answered the FAC and removed the action to this Court based on the Class Action Fairness Act, 28 U.S.C. § 1332(d). Gaines Decl. at ¶ 11.

The Parties agreed to attempt classwide resolution prior to GameStop making a motion to compel individual arbitration. The Parties exchanged data and documents and engaged in extensive pre-mediation discussions about the facts and the Parties' respective legal positions. Gaines Decl. at ¶¶ 12-15.

On July 12, 2011, the parties participated in a mediation session with Michael Dickstein, Esq., a well-respected mediator. After 19 hours of determined negotiation, the parties were able to reach a tentative resolution of the matter. Gaines Decl. at ¶ 15.

## III.   SUMMARY OF SETTLEMENT TERMS

A copy of the Joint Stipulation of Settlement and Release is attached and marked Exhibit "A" to the Declaration of Kenneth S. Gaines (hereinafter "Stipulation of Settlement" or "Stip."), submitted herewith. Its significant terms are set forth below.

### A.   The Settlement Class and Subclass

The Settlement Class is defined as:

> All persons who are, have been, or will be employed by Defendants in the State of California from December 15, 2006 through the Date of Preliminary Approval of this Settlement.

Stip. at ¶ I(5).

The PAGA Subclass is defined as:

> All Class Members who were employed by GameStop during the PAGA Subclass Period [December 15, 2009 through the Date of Preliminary Approval of this Settlement].

Stip. at ¶ I(32)-(33).

## B.   Settlement Consideration

### 1.   Payment to Class Members

The Net Settlement Amount, which is the Maximum Settlement Amount less all attorneys' fees ($187,500) and litigation costs ($7,000) as ordered by the Court, less all costs of class notice and claims administration (estimated to be $55,000) as ordered by the Court, less service payment and general release payment to Plaintiff Church (a total of $15,000) as ordered by the Court, and less the payment to the Labor and Workforce Development Agency ("LWDA") ($68,000), is approximately $417,500.  Stip. at ¶¶ I(29), V(53).

The Net Settlement Amount will be distributed to Class Members who have submitted valid and timely claims.  Stip. at ¶ I(35).  If less than the entire Settlement Amount is claimed (subject to a 35% floor on payout), then such funds shall remain the property of GameStop.  Stip. at ¶ V(53)(E), V(58).

### 2.   Payment to the LWDA Pursuant to PAGA

The parties have agreed to settle Plaintiff's and Class Members' claims for PAGA penalties (for suitable seating violations and paycard violations) for a total of $90,666.67.  Pursuant to Labor Code § 2699(i), "civil penalties recovered by aggrieved employees shall be distributed as follows:  75 percent to the Labor and Workforce Development Agency…and 25 percent to the aggrieved employees."  As such, 75 percent of the apportioned PAGA settlement amount – or $68,000 – shall be payable to the LWDA.  Stip. at ¶ V(53)(D).  The remaining 25 percent -- $22,666.67 – shall be allocated from the Net Settlement Amount to PAGA Subclass members,

i.e. those Class Members who were employed by GameStop during the applicable PAGA limitations period (one year prior to the filing of the Action through the Date of Preliminary Approval of the Settlement).  Stip. at ¶ V(57)(A).

### 3.    Payment of Claims Administration Expenses

The parties have selected ILYM Group, Inc., an experienced and reputable settlement administrator, to administer the settlement, including the provision of notice and facilitation of the claims/opt-out process.   The cost of settlement administration is estimated to be approximately $55,000, which shall be paid from the Maximum Settlement Amount.  If settlement administration expenses are less than $55,000, the difference shall become part of the Net Settlement Amount to be distributed to Class Members.  Stip. at ¶¶ V(53)(C),(F)

### 4.    Attorneys' Fees and Costs to Class Counsel

The Settlement provides that Plaintiff's counsel may request up to $187,500 as an award of attorneys' fees, representing 25% of the Maximum Settlement Amount, in consideration of the time and effort they have expended for the benefit of Plaintiff and Settlement Class Members.   Further, the Settlement provides that Plaintiff's counsel may request up to $7,000 in reimbursement of litigation costs actually and reasonably incurred during the course of this litigation.  Stip. at ¶ V(53)(A).

### 5.    Payment to the Class Representative

The Settlement provides that Plaintiff Church may request a service payment of up to $5,000 and a general release payment of $10,000, subject to the Court's approval, which are intended to compensate her for 1) the time, expense, and risk she has expended in bringing this lawsuit for the benefit of Class Members; and 2) a general release of all individual claims she has against GameStop (including her claims for wrongful termination).  Stip. at ¶ V(53)(B).

### 6.      Non-Monetary Settlement Terms

GameStop has agreed to amend its employment practices to ensure compliance with the requirements of *Labor Code* §§ 212 and IWC Wage Order 7-2001, § 14 as described below.  Stip. at ¶ V(65).

First, with regard to Plaintiff's claim pursuant to *Labor Code* § 212, GameStop has agreed to cease using its existing Comdata paycard program in favor of a new paycard which permits fee-free usage – including a free cash-out option – after wages are issued.  Based on investigation by Plaintiff's counsel, GameStop's California employees may save over $100,000 per year in access charges as a result of GameStop's adoption of this new card.  Stip. at ¶ V(65).

Second, to ensure suitable seating for its employees, GameStop has agreed to provide at least two seats per California store, including no less than one stool for use on the sales floor.  *Id.*

This injunctive relief requires GameStop's compliance for no fewer than three years.  Stip. at ¶ V(65).

### C.      The Release by Plaintiff and Class Members

The release, to which all Class Members (except for those who submit a valid and timely request for exclusion) will be bound, releases

> "…Settling Defendants of any and all claims that were asserted in the Instant Action, and any and all claims, under any theory whatsoever, to the extent that such claims arise out of the alleged facts, circumstances, and occurrences underlying the allegations as set forth in the Plaintiff's Complaint or in any Amended Complaint filed in this Action, including but not limited to any and all claims arising under the IWC Wage Orders; California Labor Code, including, without limitation, §§ 212, 225.5, and 1198; California Business & Professions Code §§17200 et seq.; and any and all claims under the Private Attorney General Act (California Labor Code Section 2698) relating to the claims being released herein."

The scope of the release is from December 15, 2006 through the preliminary approval date.  The release includes a waiver of Cal. Civil Code section 1542 with respect to these released claims.  Stip. at ¶ I(8); V(55).

## IV.   PRELIMINARY SETTLEMENT APPROVAL PROCESS

A class action may not be dismissed, compromised or settled without court approval.  Fed. R. Civ. P. ("FRCP") 23(e).  Judicial proceedings under the Federal Rules of Civil Procedure have led to a defined procedure and specific criteria for settlement approval in class actions that are thoroughly described in the Manual for Complex Litigation (Fourth) ("*Manual* (Fourth)") § 21.62 (2004).  Federal Rule of Civil Procedure 23(e) sets forth a "two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004) (citing Manual for Complex Litigation (Third) ("*Manual* (Third)") § 30.41 (1995)).

Preliminary settlement approval and notice to the proposed class are appropriate where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (quoting *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 570 n. 12 (E.D. Pa. 2001)); *see also Hanlon v. Chrysler Corp.*, 150 F. 3d 1011, 1027 (9th Cir. 1998) (the court's task is to "balance a number of factors," including "the risk, expense, complexity, and likely duration of further litigation," "the extent of discovery completed and the stage of the proceedings," and "the amount offered in settlement").  This procedure for preliminary approval of settlement agreements, endorsed by the leading class action commentator, Professor Newberg, and commonly used by Federal courts, safeguards

1   class members' procedural due process rights and enables a court to fulfill its role as

2   the "guardian" of the class.  *See* 4 Alba Conte & Herbert B. Newberg, *Newberg on*

3   *Class Actions* ("*Newberg*"), § 11.22 (4th ed. 2002).

4        The approval or rejection of the proposed settlement is committed to the

5   Court's sound discretion.  *See Class Plaintiffs v. City of Seattle*, 955 F. 2d 1268, 1276

6   (9th Cir. 1992) (in the context of a class action settlement, appellate court cannot

7   "substitute [its] notions of fairness for those of the [trial] judge and the parties to the

8   agreement," and will reverse only upon a strong showing of abuse of discretion).

9        The Court's preliminary evaluation of the proposed settlement purports to

10   determine whether it is within the permissible "range of reasonableness" and thus,

11   whether the notice to the class is appropriate.  4 *Newberg* § 11.25-26; *Manual* (Third)

12   § 30.41 (1995).

13        **A.     Provisional Certification of the Settlement Class**

14        The Parties request that the Court provisionally certify the proposed Settlement

15   Class.  Provisional class certification is appropriate at the preliminary approval stage

16   where, as here, the proposed settlement class (as defined in the parties' Settlement)

17   has not previously been certified by the Court, and the requirements for certification

18   are met.  4 *Newberg* § 11.22; *see generally*, Gaines Decl. at ¶¶ 35-43.  Provisional

19   class certification facilitates distribution of notice on the terms of the proposed

20   settlement and the date and time of the final approval hearing to all settlement class

21   members.  *See Manual* (Third) § 30.41.

22        The additional rulings sought by this motion – approving the form, content and

23   distribution of the Settlement Documents and scheduling a formal fairness hearing –

24   facilitate the settlement approval process, and are also traditionally made at this

25   preliminary approval stage.  4 *Newberg* § 11.26.

26        **B.     Settlement Administration Timeline**

27        The following schedule sets forth a proposed sequence for the relevant dates

28   and deadlines embodied in the Settlement, conditioned upon this Court granting

- 8 -

**NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

preliminary approval of the proposed Settlement.   This is outlined in the Proposed Order filed herewith.  *See* Stip. at ¶ VI:

| | |
|---|---|
| Last day for GameStop to provide the settlement administrator with last known addresses and/or e-mail addresses of Class Members | 21 days after preliminary approval |
| Last day for settlement administrator to mail notice to Class Members | 35 days after preliminary approval |
| Last day for requests for exclusion from the settlement to be postmarked by Class Members | 45 days after mailing |
| Last day for claims to be submitted by Class Members | 45 days after mailing |
| Last day for Plaintiff to file motion for final approval of settlement and application for attorneys' fees and costs, class representative's service payment, and claims administration expenses | 55 days after mailing |
| Last day for Class Members to file objections to the settlement | 62 days after mailing |
| Last day for parties to file a response to objections to the settlement | 10 days after the deadline to submit objections, or 7 days before the hearing on motion for final approval of settlement, whichever is later |
| Hearing on motion for final approval of settlement and application for attorneys' fees and costs, class representative's service payment, and claims administration expenses | 75 days after mailing or as soon as the matter may be heard thereafter |
| Last day for GameStop to deposit all necessary funds with the Claims Administrator | 28 days after receiving the final list of Qualified Claimants from the Claims Administrator after Final Approval of the Settlement |

# V.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost and rigors of formal litigation.  *See* 4 *Newberg* § 11.41 (and cases cited therein); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

Preliminary evaluation of class action settlements is intended to determine only whether the proposed settlement is within the range of possible approval or whether it is potentially fair, as the Court will make a final determination on adequacy at the final approval hearing.  *See Acosta v. Trans Union LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007); *In re Traffic Exec. Ass'n*, 627 F.2d 631, 633-34 (2d Cir. 1980); 4 *Newberg* § 11.25.

The Court thus has broad powers to determine whether a proposed settlement is fair under the circumstances of the case, *see Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *Acosta*, 243 F.R.D. at 384 (citing *Yamamoto v. Omiya*, 564 F.2d 1319, 1325 (9th Cir. 1977)), and preliminary approval of a settlement agreement should be granted unless there are reasons to doubt its fairness or there are other "obvious deficiencies" in the proposed settlement making it clear it would not ultimately weather a final approval hearing.  *See In re Prudential Securities, Inc.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995).

To make this fairness determination, courts consider several relevant factors, including the strength of the plaintiffs' case, the risk, expense, complexity and likely duration of further litigation, the risk of maintaining class action status through trial, the amount offered in settlement, the extent of discovery completed and the stage of the proceedings, as well as the experience and views of counsel.  *Torrisi*, 8 F.3d at 1375.  This list of factors is not exclusive, however, and the court may balance and weigh factors differently depending on the factual circumstances of each case. *See id.* at 1376.

When examining settlement agreements, a presumption of fairness exists where: (1) the settlement is reached through arm's-length bargaining; (2) investigation and discovery are sufficient to allow counsel and the court to act intelligently; (3) counsel is experienced in similar litigation; and (4) the percentage of objectors is small.  4 *Newberg* § 11.41.

Here, the proposed Settlement clearly falls well within the range of reasonableness as the terms of the agreement are fair and adequate and provide an excellent result for Plaintiff and Class Members, especially considering the complexities of the case, the substantial risk inherent in non-certification, the risk GameStop prevails on a motion to compel individual arbitration, and the risks of not prevailing on the merits at trial.  Gaines Decl. at ¶¶ 6, 17-34.  The Parties have engaged in informed, good faith, arms-length negotiations with adequate access to necessary information, and did so with the assistance of a highly regarded and experienced mediator, who ultimately suggested a settlement along the lines that the Parties' eventually agreed upon.  *See generally* Gaines Decl. at ¶¶ 12-15.

Moreover, both Plaintiff's counsel and Defendants' counsel are experienced in class action matters and are capable of assessing the strengths and weaknesses of claims and the benefits of the proposed Settlement under the circumstances of the case.  Plaintiff's counsel believes the Settlement offers a fair and adequate result to Class Members, commensurate with the risks of further litigation.  Accordingly, preliminary approval of the Settlement is appropriate.  Gaines Decl. at ¶¶ 2-6, 17-34.

## A.   The Terms of the Proposed Settlement Provide Reasonable Compensation for Plaintiff's and Class Members' Damages

Ultimately, a settlement should stand or fall on the adequacy of its terms.  *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981).  This matter presents a unique factual pattern and the Settlement reflects an excellent compromise, both monetarily and non-monetarily, of the two claims in the Action.

### 1.  Plaintiff's Claims for Improper Paycards

In the lawsuit, Plaintiff alleges that GameStop issues wages to its employees by Comdata pay cards which violate *Labor Code* § 212.  *Labor Code* § 212 sets forth certain requirements that employers must follow when issuing wages to California employees.  One requirement is that the instrument on which wages are issued must be printed with a California address notifying employees where they can obtain cash for their wages on demand, without paying a fee.  *See Labor Code* § 212(a).  The address printing requirement is waived only if the bank issuing a paycheck will cash the paychecks at any of its branches in California without charging a fee on demand.  *See Labor Code* § 212(c).  The statute's requirements ensure that California workers are able to obtain their full wages without being forced to pay check cashing fees and/or having to wait to obtain their wages due to bank holds.  Such protections are particularly meaningful to employees, like Plaintiff, who live paycheck to paycheck.  Gaines Decl. at ¶ 19.

Importantly, as interpreted by the California Division of Labor Standards Enforcement, *Labor Code* § 212 applies to *any form* of payment of wages, not just paychecks.  GameStop used paycards to issue wages to all its employees who elected not to use, or could not use, direct deposit.

Plaintiff alleges that these paycards forced GameStop's employees to incur fees to obtain their wages – particularly those without their own bank account.  Specifically, Plaintiff contends there is no way for a GameStop employee to obtain 100% of his or her wages using the paycard – they are forced to incur ATM fees to withdraw their funds or, alternatively, write a check on their paycard account and pay a fee to cash these checks.  Because the paycards were not payable in cash at any California location, Plaintiff contends GameStop is liable to her and Class Members for damages, restitutionary relief pursuant to *Business and Professions Code* § 17200 *et seq.* and penalties under PAGA, distributable 25% to Class Members and 75% to

the Labor & Workforce Development Agency ("LWDA").  *See Labor Code* § 2699(i).  Gaines Decl. at ¶ 19.

Notably, discovery revealed that GameStop was likely in compliance with *Labor Code* § 212 prior to mid-2010.  Comdata maintained a relationship with a large California supermarket chain to permit Class Members to obtain their full wages, without any fees, by swiping their pay card at the customer service counter.  Plaintiff alleges that when Comdata discontinued its relationship with this supermarket in 2010, GameStop's paycard program ceased complying with California law.  As a result, based on minimum withdrawal fees of $1.75 (the amount Comdata charged Class Members to access their wages after the first fee-free withdrawal), Class Members have likely suffered actual damages of no more than $100,000 (and likely far less, based on approximately 52,000 paycard loads during this time frame).  Gaines Decl. at ¶¶ 20-21.

Moreover, it appears that the deficiency in the paycard program alleged by Plaintiff was not the "fault" of GameStop – it was the result of a unilateral policy change by Comdata which Plaintiff alleges triggered a violation of *Labor Code* § 212.  Gaines Decl. at ¶¶ 20-21.

In contrast, GameStop contends that the Comdata paycard system always provided one fee-free ATM withdrawal per pay period – which is undisputed – and as a result, that it complied with *Labor Code* § 212's requirements at all times.  Gaines Decl. at ¶ 21.

## 2.  Plaintiff's Claims for Suitable Seating

Plaintiff also seeks PAGA penalties based on GameStop's alleged failure to provide seats in the workplace as required under *Labor Code* § 1198 and IWC Wage Order 7-2001, § 14.  Plaintiff further contends that recent California cases have confirmed that PAGA penalties are recoverable when retailer employers fail to provide adequate seating for their employees.  See *Bright v. 99 Cents Only Stores*,

**NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

189 Cal.App.4th 1472, 1477-78 (2010); *Home Depot U.S.A., Inc. v. Sup. Ct.,* 191 Cal.App.4th 201 (2010).

Plaintiff contends that GameStop does not provide any seating whatsoever on its sales floor.  Even if its retail store employees must move around the store during their workday, there are extended periods during which they must work behind a register – times when a seat can reasonably be accommodated.  Gaines Decl. at ¶¶ 22-23.

### 3. Plaintiff and Class Members Faced Substantial Risk Opposing Defendants' Anticipated Motion to Compel Individual Arbitration

Plaintiff's primary – and imminent – risk in not reaching a favorable settlement with GameStop at this juncture was that GameStop would move to compel individual arbitration, based on an arbitration agreement entered into by Plaintiff (and all Class Members) which purports to waive Class Members' rights to institute, or be part of, any class, collective, or representative action.  Gaines Decl. at ¶¶ 25-26.

During the pendency of this Action, the Supreme Court concluded in *AT&T Mobility, LLC v. Concepcion*, 131 S. Ct. 1740 (2011) that class action waivers in arbitration agreements are generally enforceable.  Since the ruling in *Concepcion*, at least one court in the Central District has enforced such a class action waiver in the employment wage and hour context.  *See Quevedo v. Macy's, Inc., et. al.* (C.D. Cal. June 16, 2011, No. CV09-1522 GAF (MANx)) (finding PAGA claims are subject to individual arbitration in light of *Concepcion*).

In contrast, one California Court of Appeal just issued a decision – not binding on this Court but persuasive authority nonetheless – finding that claims for PAGA penalties are not subject to individual arbitration.  *Brown v. Ralphs Grocery Company, et. al.*, 197 Cal.App.4th 489 (2011) (holding that *Concepcion* "does not provide that a public right, such as that created under the [Private Attorney General Act of 2004], can be waived if such a waiver is contrary to state law")

- 14 -

The uncertainty in California law on this arbitration issue required Plaintiff to compromise her claims for purposes of settlement.  Plaintiff submits this risk was particularly significant considering that Plaintiff's claims are novel, and are unlikely to be brought by the vast majority – if any – class members in separate, individual actions.  Furthermore, the value of these claims on an individual basis is minimal – and 75% of any PAGA recovery must be paid to the LWDA.  If a classwide settlement could not be reached, it was highly unlikely that any Class Members would obtain any recovery on these claims.  This risk militates in favor of the fair compromise achieved by the Settlement.  Gaines Decl. at ¶¶ 25-26.

### 4. Plaintiff and Class Members Faced Substantial Risk in Prevailing on the Merits of Their Claims

GameStop argued that all of its retail employees are expected to traverse the sales floor throughout the course of their work day, and that as a result the nature of their work does not reasonably permit the use of seats.  Plaintiff contended that in all of GameStop's stores, all employees are expected to use the cash register for extended periods throughout the day, and are often required to idly stand by for customers to request their assistance; during both of these job duties, seating can reasonably be provided with absolutely no interference with their job duties.  Gaines Decl. at ¶¶ 22-24.

GameStop's defenses to liability on this claim are an important basis for further validating the reasonableness of the settlement amount.  The suitable seating claim is novel – few, if any, trial courts have ruled on the merits of any such claim, and no appellate authority exists.  Put simply, Plaintiff faces substantial risk in prevailing on this claim. *Id.*

Similarly, Plaintiff's paycard claims are novel as well.  Plaintiff is unaware of any trial or appellate court ruling regarding *Labor Code* § 212 in the context of employee paycards.  There is also minimal federal authority – and no controlling authority – on the *Labor Code* § 212 requirements in the context of paychecks.  *See*

- 15 -

*Weston v. FedEx Office and Print Services, Inc.*, 707 F.Supp.2d 1074 (2010); *Solis v. The Regis Corporation*, 612 F.Supp.2d 1085 (N.D.Cal.2007); *Fleming v. Dollar Tree Stores, Inc.*, 2006 WL 2975581 (N.D. Cal. Sept. 15, 2006, No. C06-03409 MJJ);

Moreover, GameStop has legal and factual grounds for defending the paycard claim. Significantly, its most persuasive argument – that GameStop employees have always had access to their wages through any ATM via one fee-free withdrawal per pay period – is a strong potential defense. Gaines Decl. at ¶ 21.

### 5. Plaintiff and Class Members Faced Substantial Risk in Obtaining a Substantial Judgment at Trial

Even if Plaintiff prevailed on her claims, the amount of PAGA penalties to be awarded are completely within the Court's discretion. *Labor Code* § 2699(e)(2). *See generally Amaral v. Cintas Corp. No. 2*, 163 Cal.App.4th 1157 (2008); *Caliber Bodyworks, Inc. v. Superior Court*, 134 Cal.App.4th 365 (2005). Plaintiff believed it very unlikely that the Court would impose substantial penalties against GameStop for suitable seating violations, especially considering that 1) this violation did not cause monetary injury to Class Members and 2) the only case law establishing potential liability for this violation was published in 2010. While Plaintiff estimates that GameStop's maximum liability for these PAGA claims (at the rate of $100 per employee, per bi-weekly pay period, over a 1-year statutory period) was over $5 million, as a result of the broad discretion the trial court exercises to select an appropriate, non-confiscatory penalty, and the novelty of the suitable seating claims, Plaintiff and her counsel strongly considered the risk that GameStop would defeat the majority – if not all – penalties resulting from the violation of these provisions, even if Plaintiff did prevail on the merits of the claim. Gaines Decl. at ¶ 27.

Obtaining a substantial recovery on the paycard claim was similarly challenging for the same reasons; although Plaintiff contends she and Class Members did suffer economic loss as a result of the paycard policy, the amount of penalties sought would eclipse the restitution sought. The risk of recovering a substantial

1   award of discretionary penalties – even if Plaintiff prevailed on the merits – was

2   substantial. *Id.*

### 6. Two Previous Class Action Settlements May Have Been Found to Release Class Members' Claims Through June 21, 2010

GameStop argued that the effective releases in two recent Court-approved class action settlements, *Neuvenheim v. GameStop Corp., et. al.* (C.D. Cal., No. CV09-6799 ODW (Ex)) and *Barrera v. GameStop Corp., et. al.* (C.D. Cal., No. CV09-1399 ODW (Ex)), barred Plaintiff's claims asserted in this Action through June 21, 2010. Plaintiff adamantly opposed this position. Gaines Decl. at ¶ 28.

Had the Court found that those releases barred the claims in this Action for all times through June 21, 2010, it would have substantially adversely affected the value of Plaintiff's claims for damages, restitution, and PAGA penalties. This is a risk the Parties evaluated in reaching the Settlement. *Id.*

### 7. The Value of the Settlement's Injunctive Relief is Substantial

The Settlement achieves more than just a monetary payment to Class Members and the LWDA; it requires GameStop to make changes in its practices which provide substantial value/savings to current and future GameStop employees, far in excess of the standards set by California law. *See* Stip. at ¶ V(65).

As described above, GameStop has agreed to provide a minimum specified level of seating for its California retail store employees. This agreement binds GameStop even if California law is interpreted during the next three years to require the provision of a different, lesser standard of seating to employees. *Id.*; Gaines Decl. at ¶ 31.

Equally important, GameStop has agreed to adopt a new paycard payroll system which not only complies with the minimum requirements of California law (e.g., one fee-free transaction to access all wages at an established California business per pay period), but which will save its employees a substantial amount of transaction fees by offering additional no-cost options to access to their wages. This contrasts

1    with its existing program, which imposes fees (minimum $1.75) for all transactions

2    after the first transaction per pay period.  Gaines Decl. at ¶ 29.

3         Although the value of this relief is extremely difficult to value, it is estimated

4    that if each GameStop employee who receives wages by paycard saves $1.75 per pay

5    period, over three years current and future GameStop employees will save over

6    $200,000 in paycard transaction fees.  This is in addition to the cost savings to

7    employees of GameStop's minimum compliance with *Labor Code* § 212.  Gaines

8    Decl. at ¶ 30.

9         In summary, Plaintiff faced substantial risk 1) maintaining her claims on a

10   representative basis; 2) prevailing on the merits of her claims; and 3) recovering

11   substantial discretionary penalties.  As a result, the settlement – including the

12   substantial value of GameStop's changed practices going forward – represents an

13   excellent compromise.  Gaines Decl. at ¶¶ 17-34.

**B.    The Settlement is the Product of Serious, Arm's-Length, Informed Negotiations and There are no Indications Present to Doubt its Fairness**

16        The Parties engaged in arm's-length, informed negotiations during the course

17   of litigation in order to reach the proposed Settlement.  Gaines Decl. at ¶¶ 12-15.

18        The judgment of experienced counsel is also an important factor in a court's

19   determination that negotiations were fair and informed.  Absent fraud and collusion,

20   the court may not only *rely* upon the judgment of experienced counsel, but should be

21   hesitant to "substitute its own judgment for that of counsel."  *Cotton v. Hinton*, 559

22   F.2d 1326, 1330 (5th Cir. 1977); *see also Officers for Justice v. Civ. Serv. Comm'n of*

23   *San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).  Furthermore, the involvement of

24   an objective, third-party neutral tends to demonstrate the presence of arm's-length

25   negotiations.  *See Martens v. Smith Barney*, 181 F.R.D. 243, 262-63 (S.D.N.Y. 1998).

26        Class Counsel have conducted significant investigation and discovery into the

27   facts of this class action case, including the exchange documents and data aimed at

28

- 18 -

ascertaining the potential value of Plaintiff and Class Members' claims and likelihood of ultimate success.  Gaines Decl. at ¶¶ 12-15.

Based on this investigation and evaluation, Plaintiff's counsel firmly believe the Settlement, on the terms set forth in the Stipulation, is fair, reasonable, adequate, and is in the best interest of the Settlement Class in light of all known facts and circumstances, including the risk of significant delay, the risk the Settlement Class will not be certified by the Court, the defenses asserted by GameStop, and numerous potential appellate issues.  Preliminary approval of the Stipulation of Settlement is appropriate.  Gaines Decl. at ¶¶ 17-34.

## VI.   PROVISIONAL CLASS CERTIFICATION IS APPROPRIATE

The Named Plaintiff may, at the preliminary approval stage, request that the Court provisionally approve certification of the class for settlement purposes, conditioned upon final approval of the settlement.  4 *Newberg* § 11.26 (the court's findings "at a preliminary hearing or conference concerning a tentative settlement proposal . . . may be set out in conditional orders granting tentative approval to the various items…. These conditional rulings may approve a temporary settlement class, the proposed settlement, and the class counsel's application for fees and expenses.")  Before a court evaluates a settlement under Federal Rule of Civil Procedure 23(e), it must determine that the settlement class satisfies the requirements enumerated under Rule 23(a) and at least one of the requirements in Rule 23(b).  *Molski v. Gleich*, 318 F.3d 937, 946 (9th Cir. 2003).  As discussed below, the proposed class meets all of the requirements of certification for settlement purposes.

### A.   FRCP 23(a) Requirements For Class Certification Are Met

Preliminary approval of the Settlement is justified because the class certification requirements exist for the Settlement Class.  Rule 23(a) provides the factors that the Court looks to for class certification: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are

- 19 -

typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  All four of these elements are satisfied by the proposed class for Settlement purposes.

### 1.      Numerosity

If the class is sufficiently large that joinder of all members is impractical or that individual joinder is impractical, the numerosity requirement is met.  *See Cox v. American Cast Iron Pipe*, 784 F.2d 1546, 1557 (11th Cir. 1986).

The class consists of approximately 20,500 members and the PAGA subclass consists of approximately 5,000 members.  Therefore, joinder of individual claims would be impractical and the numerosity requirement is satisfied for settlement purposes only.  Gaines Decl. at ¶ 37.

### 2.      Commonality

The commonality requirement of Rule 23(a) is met if there are common questions of fact and law among the class.  *Hanlon*, 150 F.3d at 1019 ("The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class").  Here, the Settlement Class Members all seek the same remedies under identical state laws, all relating to GameStop's alleged violations of *Labor Code* §§ 212 and 1198 and IWC Wage Order 7-2001, §14.  Plaintiff submits that the same factual predicates apply to each and every Class Member and the Settlement compensates Class Members for these identical claims.   Gaines Decl. at ¶ 38.   Under these circumstances, the commonality requirement is satisfied for settlement purposes.  *Id*. at 1019-20; *see also Cox*, 784 F.2d at 1557.

### 3.      Typicality

The typicality requirement of Rule 23(a) is met if the claims of the Named Plaintiff are typical of the class, though "they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.  Factual differences may exist between the class and the Named Plaintiff, provided the claims arise from the same events or course of conduct

and are based upon the same legal theories. Gaines Decl. at ¶ 39. Moreover, the typicality and commonality elements of Rule 23(a) "tend to merge" because both assess whether the claims of the class and the named plaintiffs are sufficiently interrelated to make class treatment appropriate. *Gen. Tel. Co. of the SW v. Falcon*, 12 S.Ct. 2364, 457 U.S. 147, 157 n. 13 (1982).

It is Plaintiff's position that Plaintiff Church's claims are not only typical of those of all Class Members – they are identical. Plaintiff Church alleges that she was unable to obtain all wages earned upon demand, without discount (*Labor Code* § 212) as a result of a uniformly-applied paycard policy, and was not provided suitable seating while on duty at work (*Labor Code* § 1198, IWC Wage Order 7-2001, § 14) in a job title (with job duties) similar to all other Class Members. Gaines Decl. at ¶ 39. Plaintiff satisfies the typicality requirement for settlement purposes because her claims arise from the same factual basis and are based on the same legal theories as those applicable to all Settlement Class Members. *Welmer v. Syntex* 117 F.R.D. 641, 644 (N.D. Cal. 1987).

### 4.    Adequacy of Representation

Rule 23(a)(4) requires that the named plaintiff and class counsel fairly and adequately represent and protect the interests of the class. If the Named Plaintiff and Class Counsel have no interests adverse to the interest of the proposed class members and are committed to vigorously prosecuting the case on behalf of the class, then the adequacy requirement is met. *Hanlon*, 150 F.3d at 1020; *see also Griffin v. Carlin*, 755 F.2d 1516 (11th Cir. 1985).

Here, Plaintiff Church has interests directly aligned with all Class Members and has vigorously prosecuted this case on their behalf. She has no apparent conflicts with Class Members. She has demonstrated her commitment to prosecute this Action on their behalf through its conclusion. Gaines Decl. at ¶ 40.

Under the proposed Settlement, Ms. Church will request a small service payment – $5,000, for her significant time and efforts assisting Class Counsel with

1    factual issues surrounding the case.  She also seeks a payment of $10,000 in exchange

2    for the general release of all claims, including wrongful termination claims, she

3    asserts against GameStop.  *Id.*; Stip. at ¶ V(53)(B)

4        The total award sought represents two percent of the Maximum Settlement

5    Amount, and therefore does not constitute a sufficient conflict of interest to foreclose

6    fulfilling the adequacy requirement.

7        Additionally, Plaintiff's counsel are highly experienced litigators, with more

8    than five decades of litigation experience.  As evidenced by the declaration of

9    Kenneth S. Gaines filed herewith, each of the attorneys working on this matter has

10   substantial experience prosecuting complex class action cases, both in the consumer

11   and employment contexts.  As such, there is no conflict of interest between the

12   Named Plaintiff, proposed Class Counsel, and the Settlement Class Members, and the

13   adequacy element is met.  Gaines Decl. at ¶ 41.

### B.    FRCP 23(b)(3) Requirements for Class Certification are Met

15       The proposed Settlement Class also meets the requirements of Rule 23(b)(3)

16   for settlement purposes because: 1) common questions predominate over questions

17   that affect individual members; and 2) class resolution is superior to other available

18   methods of adjudication.  When assessing predominance and superiority, the Court

19   may consider that the class will be certified for settlement purposes only.  *Amchem*

20   *Prods., Inc. v. Windsor*, 521 U.S. 591, 618-620 (1997).  A showing of manageability

21   at trial is unnecessary; the dispositive inquiry at this stage is "whether the proposed

22   classes are sufficiently cohesive to warrant adjudication by representation."  *Id.* at

23   618-20, 623; *see also Hanlon*, 150 F.3d at 1022.

### 1.    Predominance

25       The claims of the Settlement Class here are sufficiently cohesive to warrant

26   certification for purposes of settlement.  For settlement purposes, common questions

27   of fact and law affecting proposed Class Members in this case clearly predominate

28   over questions that may affect individual members.  In analyzing predominance, as

**NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

with commonality, "[i]t is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions." *Cox*, 784 F.2d at 1557.  Plaintiff submits that the proposed Settlement Class is sufficiently cohesive because all Settlement Class Members share a common nucleus of facts and potential legal remedies – the same facts and law govern their claims; this Court could try their claims in representative fashion by common evidence regarding Plaintiff's and Class Members' claims, and identical law applies. Few, if any, factual issues are individualized to Class Members.  All of the Settlement Class Members seek relief based on the same allegations and factual predicates.  As a result, common questions of law and fact predominate here.  Gaines Decl. at ¶ 42.

### 2.    Superiority

Particularly in the settlement context, class resolution is superior to other available methods for the fair and efficient adjudication of the controversy.  *See Hanlon*, 150 F.3d at 1023.  The superiority requirement involves a "comparative evaluation of alternative mechanisms of dispute resolution." *Id.* At 1023.  Here, as in *Hanlon*, the alternative method of resolution is individual claims for very small amounts of damages, proving uneconomical for potential plaintiffs because the cost of litigation dwarfs their potential recovery.  *Id.*

Perhaps the most persuasive argument in favor of the superiority of class treatment here is the minuteness of the alleged violations by Defendants (i.e., Class Members were subject to small check cashing or ATM fees, as little as just $1.75 each); were a class not certified, many (if not all) Class Members would not bring claims for the violations alleged, because few (if any) know that GameStop's conduct is unlawful.  As a result, class treatment is a superior method for adjudicating these claims, and a class action is the preferred method of resolution.  Gaines Decl. at ¶ 43.

- 23 -

## VII.   THE PROPOSED CLASS NOTICE IS APPROPRIATE

### A.   The Class Notice Satisfies Due Process

The Class Notice, attached as Exhibit "1" to the Stipulation of Settlement, is intended to apprise all Class Members of the litigation and their right to claim a share of the settlement (or opt-out of/object to it).  The proposed notice meets the standards set forth in Rule 23(c)(2)(B) for classes certified under Rule 23(b)(3).  All Class Members are current and former GameStop employees.  As such, GameStop has a last known address for each Class Member (and the Settlement Administrator will use traditional methods, such as skip tracing, to update outdated addresses); notice by regular U.S. mail is sufficient and reasonably calculated to provide adequate notice to the Class.

The Notice and Settlement administration processes are consistent with those approved by numerous state and federal courts and are, under the circumstances of this case, the best notice practicable.

### B.   The Proposed Notice is Accurate and Informative

The proposed notice provides information on the meaning and nature of the proposed settlement and Settlement Class, the terms and provisions of the Settlement, the relief the settlement will provide Settlement Class Members, the amount of the proposed service payment and general release payment to Ms. Church, the amount of attorneys' fees and costs that Class Counsel may request, and the date, time and place of the final approval hearing.  The notices clearly and accurately describe the nature of the action, the definition of the Settlement Class, and the class claims.  *See* Exs. "1" and "2" to Stipulation.  The notices also inform class members that they may enter an appearance through counsel if they so desire, indicate that the Court will exclude from the class any member who requests exclusion, and explains the binding nature of class judgment under Rule 23(c)(3).  *Id.*  The notice also provides class members with an opportunity to file objections to the settlement as required by Rule 23(e)(4)(A).  *Id.*

- 24 -

Further, the notice also fulfills the requirement of neutrality in class notices. *See* 2 *Newberg* § 8.39.  It summarizes the proceedings to date, Plaintiff's allegations, and the terms and conditions of the Settlement, in an informative and coherent manner, in compliance with the *Manual's* mandate that "the notice should be accurate, objective, and understandable to Class Members. . . ." *Manual* (Third) at § 30.211.  The notice clearly states that the Settlement does not constitute an admission of liability, and recognizes that the Court has not ruled on the merits of the action.  It also states that the final Settlement approval decision has yet to be made.  Accordingly, the notice complies with the standards of fairness, completeness and neutrality required of a settlement class notice disseminated under authority of the Court.  *See* Fed. R. Civ. P. 23(c)(2), 23(e); 2 *Newberg* §§ 8.21, 8.39; *Manual* (Third) §§ 30.211, 30.212.

## VIII.  A FINAL APPROVAL HEARING SHOULD BE SCHEDULED

The last step in the settlement approval process is the formal fairness hearing, at which the Court may hear all evidence and argument necessary to evaluate the Settlement.  At that hearing, proponents of the Settlement may explain and describe its terms and conditions and offer argument in support of Settlement approval, and members of the Settlement Class, or their counsel, may be heard in support of or in opposition to the Settlement Agreement. The parties recommend that the hearing be held approximately 110 days after preliminary approval by the Court, or on or about February 13, 2012, which would give the Parties sufficient time to provide notice to Class Members.  At the same time, Plaintiff will file and brief her application for an award of attorneys' fees and costs, and for the Plaintiff's service payment and general release payment.

## IX.  CONCLUSION

The Settlement is fair and reasonable and all of the requirements for preliminary approval are met.  The Court is therefore requested to grant this motion and enter an order in the form submitted herewith.

1

2      DATED:  September 1, 2011            Respectfully submitted,

3                                          GAINES & GAINES,
                                           A Professional Law Corporation
4

5
                                           By:  __/s/_____
6                                                Kenneth S. Gaines, Esq.

7                                                Daniel F. Gaines, Esq.

8                                                Alex P. Katofsky, Esq.
                                                 Attorneys for Plaintiff Angela Church
9                                                and Proposed Class Counsel

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**