1  KENNETH S. GAINES (SBN 049045)
   ken@gaineslawfirm.com
2  DANIEL F. GAINES (SBN 251488)
   daniel@gaineslawfirm.com
3  ALEX P. KATOFSKY (SBN 202754)
   alex@gaineslawfirm.com
4  GAINES & GAINES, APLC
   21550 Oxnard Street, Suite 980
5  Woodland Hills, CA 91367
   Telephone: (818) 703-8985
6  Facsimile: (818) 703-8984

7  Attorneys for Plaintiff
   ANGELA CHURCH and Proposed Class Counsel

8

            **UNITED STATES DISTRICT COURT**

9

      **CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

10

11  ANGELA CHURCH, on behalf of          CASE NO.: ED CV11-00132 GAF (RZx)
    herself and all others similarly situated,
12  and on behalf of the general public,   **DECLARATION OF KENNETH S.**
                                            **GAINES IN SUPPORT OF**
13              Plaintiffs,                 **UNOPPOSED MOTION FOR**
                                            **PRELIMINARY APPROVAL OF**
14  v.                                      **CLASS ACTION SETTLEMENT**

15  GAMESTOP, INC., a Minnesota
    corporation; GAMESTOP CORP.; a         **DATE:** October 17, 2011
16  Delaware corporation; and DOES 1       **TIME:** 9:30 A.M.
    through 50, inclusive,                 **COURTROOM:** 740
17                                          **JUDGE:** Hon. Gary A. Feess

18              Defendants.

19

20

21

22

23

24

25

26

27

28

I, KENNETH S. GAINES, hereby declare and state as follows:

1.     I am an attorney duly admitted to the practice of law in the State of California.  I am a shareholder of Gaines & Gaines, APLC, counsel for Plaintiff Angela Church and proposed Class Counsel in this action.  I have personal knowledge of the facts set forth herein and if called as a witness to testify to them, could and would do so competently.

**Experience of Class Counsel:**

2.     I obtained my BS degree from UCLA in 1966, where I majored in Business.  Subsequently, I earned my JD degree from Hastings College of Law in 1970.  I graduated near the top of my class at Hastings, and was a member of the editorial board of the Hastings Law Journal.

3.     I have been admitted to the bar of the State of California since 1971 and have represented clients in state and federal courts in California for nearly four decades.  My practice has always emphasized litigation, with a focus on business matters and complex real estate disputes.  I have significant arbitration experience and have tried dozens of cases to judgment.  I also have appellate experience.

4.     I have significant teaching experience.  I taught real property and trusts law at Mid-Valley College of Law.  I am very proud that a sizeable number of my students are now members of the Bar.  In recognition of my teaching, I won the Distinguished Faculty Award.  In recent years, I have taught a Business Law course at Pierce College.

5.     My firm has represented employees and consumers in complex class action litigation such as the instant action.  We have significant experience litigating wage and hour class actions.  My firm has participated, as lead counsel and co-lead counsel, in more than 30 class action matters, including the following (in which we were certified as Class Counsel):

a.     *Williams v. Closet World*

Los Angeles County Superior Court Case No. BC400178

**DECLARATION OF KENNETH S. GAINES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

b.   *Flores v. Cintas Corporation, et. al.*

Los Angeles County Superior Court Case No. BC400422

c.   *Cortellessa v. Dotnext, Inc.*

Alameda County Superior Court Case No. RG09429971

d.   *Adams v. Newell Rubbermaid, et. al.*

USDC-CD Case No. EDCV 08-1499 JTM (CTx)

e.   *Dorsette v. TA Operating, LLC*

USDC-CD Case No. EDCV 09-1350 PA (RZx)

f.   *Gomez v. Pizza Hut of Southeast Kansas, Inc.*

San Bernardino Cty Superior Court Case No.CIVVS900679

g.   *Burgess, et. al. v. Strategic Retail Solutions, LLC*

Los Angeles County Superior Court Case No. BC413791

h.   *Tigas v. Ajilon Communications*

Los Angeles County Superior Court Case No. BC409737

i.   *Schrader, et. al. v. Adidas Promotional Retail Operations, Inc.*

Los Angeles County Superior Court Case No. BC414168

6.   Based on my own investigation and evaluation, I am of the opinion that the Settlement, including its financial and non-financial terms, its allocation among Class Members, and the recovery for each Class Member, is fair and reasonable. I believe I have a strong understanding of the trends in both the likelihood of certification of such cases and the value of settlements of such cases. My opinion takes into consideration the amounts received in other similar class actions which I have litigated and/or am familiar with, the risks inherent in litigation of this genre, and the reasonable tailoring of each Class Members' claim to the amount received in settlement. Based on that knowledge, I am of the opinion the settlement is fair, reasonable and adequate and is in the best interests of the Class.

- 3 -

**DECLARATION OF KENNETH S. GAINES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**Procedural History of the Action:**

7.      Plaintiff and Class Members are current and former employees of Gamestop in the State of California; Gamestop is a video game retailer that operates retail stores nationwide, including more than 400 in California.  Plaintiff Church was employed by Gamestop at one of its Southern California retail stores through 2010.

8.      Plaintiff filed her complaint on December 15, 2010, alleging two claims. The first claim stems from Gamestop's alleged failure to issue its employees wages by an instrument payable on demand, without discount, at a California location, in violation of *Labor Code* § 212.  She contends that Gamestop issued its employees wages by Comdata "paycards" through which they were forced to incur check cashing and ATM fees to obtain their wages if they did not have their own bank account.

9.      Plaintiff also contends that Gamestop fails to provide its employees with suitable seating during the course of their employment, in violation of *Labor Code* § 1198 and IWC Wage Order 7-2001, § 14.  Plaintiff contends Gamestop could have provided its employees with seats or stools while working at store registers, but failed to do so in contravention of established California law.

10.      The primary relief Plaintiff seeks for these claims is civil penalties pursuant to the Labor Code's Private Attorneys General Act (PAGA) and injunctive relief.  Plaintiff also seeks damages for and restitution of check cashing and ATM fees for Gamestop's alleged violation of *Labor Code* § 212.

11.      On January 7, 2011, Plaintiff filed a First Amended Complaint ("FAC"), adding claims for penalties pursuant to PAGA following her compliance with the administrative requirements set forth in *Labor Code* § 2699.3.  Defendants subsequently removed the Action to this Court.

**Counsel's Due Diligence and Settlement Negotiations:**

12.      My firm made an extensive investigation of the facts and engaged in extensive informal discovery and research regarding our claims, including the

- 4 -

exchange of data and documents which permitted us to carefully evaluate the merits of our case and our likelihood of success, in defeating a motion to compel individual arbitration, in defeating Defendant's argument that other class action releases barred our claims, in succeeding on a motion for class certification, on prevailing on the merits of our claims, and on obtaining a substantial award of penalties at trial. Throughout the duration of this case, we have vigorously pursued this matter on behalf of the class.

13.    Based on the discovery completed, we were able to prepare a class wide liability and damages study and we carefully considered the strengths and weaknesses of the case.

14.    Plaintiff maintained the viability and likely success of her claims on a classwide/representative basis, while GameStop proffered numerous defenses to both class certification and liability.  Following our review of data and documents, and as part of continued arm's-length negotiations during the course of this litigation, the Parties agreed to attempt classwide resolution prior to Gamestop making a motion to compel individual arbitration.

15.    On July 12, 2011, the parties participated in a marathon mediation session with Michael Dickstein, Esq., a well-respected mediator.  The session lasted 19 hours, and with persistence and the mediator's evaluative assistance, the parties were able to reach a tentative resolution of the matter.

16.    The Joint Stipulation of Settlement and Release embodies a comprehensive resolution of all claims alleged by Plaintiff in the Action.  A true and correct copy of the Joint Stipulation of Settlement and Release is attached hereto as **Exhibit A**.  The Stipulation of Settlement sets forth all terms of the agreement reached by the Parties.

**Evaluation of the Fairness of the Settlement:**

17.    Resolution of the aforementioned claims on the terms set forth in the Stipulation of Settlement is in the best interest of the Class.  Further litigation will be

**DECLARATION OF KENNETH S. GAINES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

both timely, complex, and involve substantial risks to the Class Members.  Based upon the discovery we have completed and the nature of the claims alleged, no individual Class Member has suffered more than minimal monetary harm as a result of the conduct alleged in the Action.

18.    Nonetheless, the Settlement advances the legislative intent of the laws at issue and provides both financial and non-monetary benefits to Class Members, future GameStop employees, and the general public.  GameStop has agreed to pay up to $750,000 to past and present GameStop employees and has agreed to modify its practices for no less than three years, resulting in substantial cost savings to current and future GameStop employees.

## **The Nature of Plaintiff's Claims and Risks of Continued Litigation:**

19.    With respect to Plaintiff's claims for the violation of *Labor Code* § 212, Plaintiff – like many low wage employees – lives paycheck to paycheck and requires immediate access to her wages upon issuance.  GameStop used Comdata paycards to pay wages to its California employees.  Plaintiff alleges that these paycards forced Gamestop's employees to incur fees to obtain their wages – particularly those without their own bank account.  Specifically, Plaintiff contends there is no way for a Gamestop employee to obtain 100% of his or her wages using the paycard – they are forced to incur ATM fees to withdraw their funds or, alternatively, write a check on their paycard account and pay a fee to cash these checks.  Because the paycards were not payable in cash at any California location, Plaintiff contends Gamestop is liable to her and Class Members for damages, restitutionary relief pursuant to *Business and Professions Code* § 17200 *et seq.* and penalties under PAGA, distributable 25% to Class Members and 75% to the LWDA.

20.    However, discovery revealed that GameStop was likely in compliance with *Labor Code* § 212 prior to mid-2010.  Before that time, Comdata maintained a relationship with a large California supermarket chain to permit Class Members to obtain their full wages, without any fees, by swiping their pay card at the customer

service counter.  Plaintiff contends that when Comdata discontinued its relationship with this supermarket in 2010, GameStop's paycard program ceased complying with California law.  As a result, based on minimum withdrawal fees of $1.75 (the amount Comdata charged Class Members to access their wages after the first fee-free withdrawal), Class Members have likely suffered actual damages of no more than $100,000 (and likely far less, based on approximately 52,000 paycard loads during this time frame).  Discovery reveals that the alleged deficiency in the paycard program was not the "fault" of GameStop – it was the result of a unilateral policy change by Comdata.

21.   Gamestop has legal and factual grounds for defending the paycard claim. Significantly, its most persuasive argument – that Gamestop employees have always had access to their wages through any ATM via one fee-free withdrawal per pay period – is a strong potential defense.

22.   With respect to Plaintiff's claims for GameStop's failure to provide employees with suitable seating, she contends that Gamestop does not provide any seating whatsoever on its sales floor.  Even if its retail store employees must move around the store during their workday, there are extended periods during which they must work behind a register – times when a seat can reasonably be accommodated.

23.   Gamestop argued that all of its retail employees are expected to traverse the sales floor throughout the course of their work day, and that as a result the nature of their work does not reasonably permit the use of seats.

24.   Gamestop's defenses to liability on this claim are an important basis for further validating the reasonableness of the settlement amount.  The suitable seating claim is novel – few, if any, trial courts have ruled on the merits of any such claim, and no appellate authority exists.  Put simply, Plaintiff faces substantial risk in prevailing on this claim.

**DECLARATION OF KENNETH S. GAINES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**The Risk GameStop Prevailed on a Motion to Compel Individual Arbitration:**

25.   Plaintiff's most imminent risk in not reaching a favorable settlement with GameStop at this juncture was that GameStop would move to compel individual arbitration, based on an arbitration agreement entered into by Plaintiff (and all Class Members) which purports to waive Class Members' rights to institute, or be part of, any class, collective, or representative action.

26.   The uncertainty in California law on this arbitration issue required Plaintiff to compromise her claims for purposes of settlement.   This risk was particularly significant considering that Plaintiff's claims are novel, and are unlikely to be brought by the vast majority – if any – class members in separate, individual actions.   Furthermore, the value of these claims on an individual basis is minimal – and 75% of any PAGA recovery must be paid to the LWDA.   If a classwide settlement could not be reached, it was highly unlikely that any Class Members would obtain any recovery on these claims.   This risk militates in favor of the fair compromise achieved by the Settlement.

**The Risk PAGA Penalties are Reduced at Trial:**

27.   Even if Plaintiff prevailed on her claims, the amount of PAGA penalties to be awarded are completely within the Court's discretion and Plaintiff believed it unlikely that the Court would impose substantial penalties against GameStop for suitable seating violations, especially considering that 1) this violation did not cause monetary injury to Class Members and 2) the only case law establishing potential liability for this violation was published in 2010.   Plaintiff estimates that GameStop's maximum liability for these PAGA claims was over $5 million, but as a result of the broad discretion the trial court exercises to select an appropriate, non-confiscatory penalty, and the novelty of the suitable seating claims, we believe GameStop may have defeated much of these penalties even if we did prevail on

- 8 -

1    these claims.  The same applies with respect to the paycard claims – the amount of

2    penalties sought pursuant to PAGA greatly exceeds the amount of restitution sought.

3    **The Risk Releases in Other Court-Approved Class Actions Bar Plaintiff's**

4    **Claims Entirely:**

5    28.    GameStop argued that the effective releases in two recent Court-

6    approved class action settlements, *Neuvenheim v. GameStop Corp., et. al.* (C.D. Cal.,

7    No. CV09-6799 ODW (Ex)) and *Barrera v. GameStop Corp., et. al.* (C.D. Cal., No.

8    CV09-1399 ODW (Ex)), barred Plaintiff's claims asserted in this Action through

9    June 21, 2010.  Plaintiff adamantly opposed this position.  Had the Court found that

10   those releases barred the claims in this Action for all times through June 21, 2010, it

11   would have substantially adversely affected the value of Plaintiff's claims for

12   damages, restitution, and PAGA penalties.  This is a risk the Parties evaluated in

13   reaching the Settlement.

14   **Defendant's Agreement to Injunctive Relief Provides an Additional,**

15   **Substantial Benefit to Current and Future GameStop Employees:**

16   29.    GameStop has agreed to injunctive relief in connection with the

17   Settlement, including the adoption of a paycard system (and notice to employees

18   thereof) which ensures employees can obtain their wages without charge.  Equally

19   important, GameStop has agreed to adopt a new paycard payroll system which not

20   only complies with the minimum requirements of California law (e.g., one fee-free

21   transaction to access all wages at an established California business per pay period),

22   but which will save its employees a substantial amount of transaction fees by

23   offering additional no-fee options to access their wages.  This contrasts with its

24   existing program, which imposes fees (minimum $1.75) for all transactions after the

25   first transaction per pay period.

26   30.    The value of this benefit is extremely difficult to value; however, it is

27   estimated that if each GameStop employee who receives wages by paycard saves

28   $1.75 per pay period, over three years current and future GameStop employees will

save over $200,000 in paycard transaction fees.  This is in addition to the cost savings to employees of GameStop's minimum compliance with *Labor Code* § 212.

31.   GameStop has also agreed to provide a minimum of two seats per California retail store.  This provision of the Settlement requires GameStop to comply for three years even though the merits of Plaintiff's claims are truly untested in California courts.

### The Settlement Terms in Light of These Risks and Benefits:

32.   It is our judgment that GameStop's defenses to certification and liability are an important basis for validating the reasonableness of the settlement amount. GameStop has consistently maintained that it has ample legal and factual grounds for defending this action on both class and merits issues.  Considering the risks going forward, the present settlement represents an excellent compromise of Plaintiff's and Class Members' claims.

33.   The settlement for each participating Class Member is fair, reasonable, and adequate, given the inherent risk of litigation, the risk relative to class certification and the costs of pursuing such litigation.  The fairness of the settlement is demonstrated by the uncertainty and risks to the Plaintiff and the Class both in not prevailing on one or more causes of action or theories alleged in the Complaint and in non-certification.  Although Class Counsel are confident that all of the elements necessary for certification are satisfied in this case, the risk of non-certification is always present.  GameStop has adamantly disputed that Plaintiff will be able to certify any class and that the Class Members were entitled to recovery under any of the theories alleged.  If the Class were not certified, most Class Members would likely not be able to pursue their individual claims against Defendants because 1) their individual claims would not be large enough to provide incentive to litigate individually, and 2) they may not know their claims even exist.  The settlement takes these risks into account and is a good compromise for the damages of absent Class Members.

34.     Prosecution of this case will result in tangible benefits for the Class Members in the following respects: (1) By this settlement, Class Members will receive their recoveries over a reasonably short period of time as opposed to waiting additional years for the same, or a possibly worse, result; and (2) settlement at this juncture will translate into significant savings in Class Counsel's fees and costs which would have only increased exponentially had the case progressed through trial, appeals, etc.

**Suitability of the Action for Class Certification:**

35.     To date, no class has been certified.  The Settlement Stipulation reached among the Parties contains a provision pursuant to which we stipulate to the Court's provisional certification of the Settlement Class, but do so for purposes of this settlement only.

36.     As proposed Class Counsel, and based on the discovery to date, I am confident that Plaintiff could successfully prove that this action meets the requirements of class certification under Rule 23.

37.     Plaintiff contends that the Settlement Class is numerous.  The settlement class contains over 20,000 members and the subclass contains approximately 5,000 members.  Joinder of individual claims would be impractical and the numerosity requirement is satisfied for settlement purposes only.

38.     Plaintiff contends that commonality is satisfied here because all Class Members seek the same remedies under the same state laws and under the same theories of recovery.  The same factual predicates apply to each and every Class Member.  The Settlement compensates Class Members for these identical claims.

39.     Plaintiff further contends that typicality is satisfied in this case because Plaintiff Church's claims are not only typical of those of all Class Members, they are identical.  Plaintiff alleges she was not provided with suitable seating as required by California law, pursuant to a statewide policy implemented by GameStop at its retail stores.  Similarly, Plaintiff claims the policies underlying the paycards issued by

- 11 -

GameStop to its California employees do not comply with the requirements of California law.  These are the same claims alleged on behalf of all Class Members. Plaintiff contends that she satisfies the typicality requirement for settlement purposes because her claims arise from the same factual basis and are based on the same legal theories as those applicable to all Class Members.

40.    Plaintiff contends that she is an adequate class representative and her chosen counsel are qualified to act as Class Counsel in this litigation.  Plaintiff Angela Church has interests directly aligned with all Class Members and she has prosecuted this case on their behalf.  She has no apparent conflicts with Class Members.  She has demonstrated her commitment to prosecute this Action on their behalf through its conclusion.  Under the proposed Settlement, Ms. Church will request a small service payment – $5,000, for her significant time and efforts assisting Class Counsel with factual issues surrounding the case and settlement of the matter.  Moreover, the Stipulation of Settlement provides that she will be paid $10,000 in exchange for her general release of all claims against GameStop, including her asserted claims for wrongful termination and harassment.  These payments are subject to Court approval and Plaintiff will submit argument in support of these payments in connection with final approval.

41.    As discussed herein, Plaintiff's counsel are highly experienced litigators, with a collective five decades of litigation experience.  We have substantial experience prosecuting complex class action cases, both in the consumer and employment contexts.  As such, there is no conflict of interest between the Named Plaintiff, proposed Class Counsel, and Class Members, and the adequacy element is met.

42.    With respect to the predominance inquiry required under Rule 23(b)(3), Plaintiff contends that the claims of the Settlement Class here are sufficiently cohesive to warrant certification.  Common questions of fact and law affecting proposed Class Members in this case clearly predominate over questions that may

- 12 -

affect individual members; the proposed Settlement Class is sufficiently cohesive because all Settlement Class Members share a common nucleus of facts and potential legal remedies – the same facts and law govern their claims; this Court could try their claims in representative fashion by common evidence regarding Plaintiff's and Class Members' claims, and identical law applies.  All of the Class Members seek damages based on the same factual allegations.

43.    Plaintiff contends that Class treatment is a superior method to try this case.  The alternative method of resolution is thousands of individual claims for very small amounts of damages, proving uneconomical for potential plaintiffs because the cost of litigation dwarfs their potential recovery.  As a result, class treatment is a superior method for adjudicating these claims, and a class action is the preferred method of resolution.

**Presence of A Governmental Participant:**

44.    The settlement of Plaintiff's and Class Members' claims brought pursuant to PAGA involves a substantial payment to the State of California's Labor & Workforce Development Agency, a governmental participant in this Action.  The interests of the State of California are protected by this Court's approval of the Settlement, as required by *Labor Code* § 2699(l).

**Class Counsel's Attorneys' Fees and Costs:**

45.    The Parties have agreed that Class Counsel will seek no more than $187,500 (i.e., 25% of the Maximum Settlement Amount) in attorneys' fees.  This agreement is fully disclosed in the Stipulation of Settlement.

46.    This Court can appreciate that litigating a high stakes case against a large corporate defendant represented by one of the nation's most highly respected law firms in an evolving area of law is not appealing to most lawyers, particularly when the plaintiff's lawyer will have to finance the litigation.  This case was taken solely on a contingency basis and is not a case undertaken lightly.  The risk of advancing substantial costs in this type of litigation can be very high.

47.    Class Counsel has expended substantial time to date litigating the case and bringing it to fruition.  Counsel expects to spend substantial more time through a comprehensive notice and claims program and final approval process.   Class Counsel has aggressively litigated this case from the start.

48.    My experience in class actions, as well as my review of fee awards in other similar class actions, supports my conclusion that the fee request is in line with the Ninth Circuit benchmark.   Any attorneys' fees awarded are subject to this Court's approval at the final approval hearing, in advance of which Plaintiff will file a formal noticed motion.

49.    Finally, the Stipulation of Settlement provides that Class Counsel will seek to recover litigation costs of no more than $7,000 from the Maximum Settlement Amount.   At the final approval stage, Class Counsel will submit an itemized statement of costs incurred to the Court for its approval.

I declare, under penalty of perjury, under the laws of the United States, that the foregoing is true and correct.  Executed this 1st day of September, 2011 at Woodland Hills, California.


/s/ Kenneth S. Gaines
KENNETH S. GAINES

DECLARATION OF KENNETH S. GAINES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT