**JS – 6**

**LINK: 27**

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANGELA CHURCH, on behalf of herself and all others similarly situated, | Case No. CV 11-00132 GAF (RZx) |
| Plaintiff, | MEMORANDUM & ORDER REGARDING MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, PLAINTIFF ENHANCEMENT AND GENERAL RELEASE AWARDS AND AWARD OF ATTORNEY FEES AND COSTS |
| v. | |
| GAMESTOP, INC.; GAMESTOP CORP.; and DOES 1 to 50, inclusive, | |
| Defendants. | |

**I.**

**INTRODUCTION & BACKGROUND**

This is a class action lawsuit against Defendants Gamestop, Inc. and Gamestop Corp. (together, "Gamestop"), a national video game retailer with 400 stores in California, brought by Lead Plaintiff Angela Church on behalf of all Gamestop employees in California from December 15, 2006 until October 31, 2011. (Docket No. 8 [Suppl. to Not. of Removal], Ex. 1 [First Amend. Compl. ("FAC")]; Docket No. 24 [10/31/11 Order] ¶ 2.) Plaintiff's First Amended Complaint asserts claims for violations of California Labor Code section 212 (failure to issue wages payable on demand without discount); California Labor Code section 1198 and IWC Wage Order 7-2001 §

14 (failure to provide adequate seats to employees); and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code sections 17200 et seq. The FAC also seeks penalties pursuant to California's Private Attorney General Act ("PAGA"), Cal. Lab. Code section 2699(a). The FAC alleges that, for at least four years prior to January 7, 2011, Gamestop had a consistent policy of providing no seats on the floor of their retail stores for employees to utilize, and of issuing wages to employees who had not signed up for direct deposit in the form of a "Comdata paycard." These paycards were not payable in cash at any California location, and caused employees to incur fees when withdrawing their wages from an ATM or cashing a check written on their paycard account. (FAC ¶¶ 2, 8, 30, 34.) Plaintiff was employed by Gamestop at several Southern California retail stores through 2010. (Docket No. 27 [Gaines Decl.] ¶ 7.)

The parties agreed to attempt classwide resolution prior to Gamestop making a motion to compel individual arbitration, pursuant to arbitration agreements entered into by Plaintiff and all class members purporting to waive their rights to take part in any class, collective, or representative action. (Docket No. 27 [Mem. Final Settlement Approval] at 3, 14; Gaines Decl. ¶ 24.) They exchanged data and documents and engaged in extensive discussions about the facts of the case and their respective legal positions. (Mem. Final Settlement Approval at 3–4; Gaines Decl. ¶ 10.) On July 12, 2011, the parties participated in a 19-hour determined negotiation session before experienced mediator Michael Dickstein. (Mem. Final Settlement Approval at 4; Gaines Decl. ¶ 11.) As a result of this session, Plaintiff and Gamestop entered into a Joint Settlement Agreement and Release (the "Settlement Agreement") on September 7, 2011. (Gaines Decl., Ex. A [Settlement Agreement].) The Maximum Settlement Amount under the agreement is $750,000, of which $187,500 is apportioned for attorney fees, representing 25 percent of the common fund; $7,000 for court costs; approximately $55,000 for class notice and claims administration; $68,000 for penalties to be paid to California's Labor and Workforce Development Agency ("LWDA"), representing 75 percent of the total PAGA settlement of $90,666.67; and $15,000 for a

2

service enhancement and general release payment to Plaintiff Church,[1] leaving approximately $417,500 for the remaining class members. (Mem. Final Settlement Approval at 4–6; Settlement Agreement ¶¶ 29, 53.) Of this amount, a minimum of 35 percent (approximately $146,125) will be paid to the class ("Minimum Settlement Amount"). However, if less than 35 percent of class members file claims, the Minimum Settlement Amount will be divided equally among the claimants, and all remaining funds will revert to Gamestop. (Mem. Final Settlement Approval at 5; Settlement Agreement ¶¶ 53(E), 58.) In the proposed settlement, Gamestop also agreed to enact policy changes for no less than three years following the effective date of the Settlement Agreement, including (1) institution of a paycard program that permits fee-free usage, including a free cash-out option; and (2) provision of at least two seats per store, including at least one stool for use on the sales floor. (Mem. Final Settlement Approval at 6; Settlement Agreement ¶ 65.) The Settlement Agreement binds all class members to a release of all claims asserted in the action and any other claims arising from the same underlying facts and circumstances. (Settlement Agreement ¶¶ 8, 55.)

Plaintiff moved for preliminary approval of the settlement, and, following changes to the proposed opt-out procedures to be provided in the class notice, this Court granted preliminary approval. (10/31/11 Order; see Docket Nos. 18–23.) Notice has subsequently been provided to the nearly 22,500 potential class members, and the time for filing a claim has expired. Ninety-one percent of the notices were effectively delivered via U.S. Mail; approximately 1,750 class members submitted claims, representing 7.80 percent of notice recipients; only 57 class members opted out of the settlement; and no class members objected. (Gaines Decl. ¶ 16; Docket No. 27 [Molina Decl.] ¶¶ 2–10.) Plaintiff now moves for an order (1) granting final approval of the settlement, and (2) approving the payment of attorney fees and costs, the individual

---

[1] The proposed general release payment, accounting for $10,000 of the amount to be paid to Church, is intended to compensate her for releasing all claims against Gamestop, including claims for wrongful termination, harassment, and denial of meal and rest periods, which were not asserted in this litigation. (See Docket No. 27 [Mem. Fees and Service Award] at 16; Settlement Agreement ¶ 53(B).)

3

service and general release payments to her, and the settlement administration expenses to ILYM Group, Inc., in the amounts described above. (Mem. Final Settlement Approval at 27; Mem. Fees and Service Award at 17.) For the reasons explained in greater detail below, the Court **GRANTS** the motions.

## II.

## DISCUSSION

### A. MOTION FOR FINAL APPROVAL OF SETTLEMENT

#### 1. LEGAL STANDARD

Under Rule 23(e) of the Federal Rules of Civil Procedure, "claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). A court must engage in a two-step process to approve a proposed class action settlement. First, the court must determine whether the proposed settlement deserves preliminary approval. Nat'l Rural Telecomms. Coop. v. DirecTV, Inc., 221 F.R.D. 523, 525 (C.D. Cal. 2004). Second, after notice is given to class members, the Court must determine whether final approval is warranted. Id. A court should approve a settlement pursuant to Rule 23(e) only if the settlement "is fundamentally fair, adequate and reasonable." Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1375 (9th Cir. 1993) (internal quotation marks omitted); accord In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000) (citing Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998)).

Circuit law teaches that the court must balance the following factors to determine whether a class action settlement is fair, adequate, and reasonable:

(1) the strength of the plaintiff's case;

(2) the risk, expense, complexity, and likely duration of further litigation;

(3) the risk of maintaining class action status throughout the trial;

(4) the amount offered in settlement;

(5) the extent of discovery completed and the stage of the proceedings;

(6) the experience and views of counsel;

(7) the presence of a governmental participant; and

(8) the reaction of the class members to the proposed settlement.

Torrisi, 8 F.3d at 1375; accord Linney v. Cellular Alaska Partnership, 151 F.3d 1234, 1242 (9th Cir. 1998); Hanlon, 150 F.3d at 1026. "In addition, the settlement may not be the product of collusion among the negotiating parties." In re Mego Fin. Corp. Sec. Litig., 213 F.3d at 458. These factors are not exclusive, and one factor may deserve more weight than the others depending on the circumstances. Torrisi, 8 F.3d at 1376. In some instances, "one factor alone may prove determinative in finding sufficient grounds for court approval." Nat'l Rural Telecomms. Coop., 221 F.R.D. at 525–26 (citing Torrisi, 8 F.3d at 1376). In addition, "[t]he involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place create a presumption that the agreement is fair." Linney v. Cellular Alaska Partnership, Nos. C-96-3008 DLJ, C-97-0203 DLJ, C-97-0425 DLJ, C-97-0457 DLJ, 1997 WL 450064, *5 (N.D. Cal. July 18, 1997), aff'd, 151 F.3d at 1234.

### 2. APPLICATION OF TORRISI FACTORS

#### *a. Strength of Plaintiff's Case*

Plaintiff faces several challenges to succeeding on the merits of her claims; thus, this factor favors approving the settlement. Most threatening is Gamestop's anticipated motion to compel individual arbitration of all claims, pursuant to arbitration agreements entered into by Plaintiff and each class member purporting to waive their rights to institute or be part of any class, collective, or representative action. (Mem. Final Settlement Approval at 14–16; Gaines Decl. ¶ 24.) During the pendency of this action, the Supreme Court, in AT&T Mobility, LLC v. Conception, held that class action waivers in arbitration agreements are generally enforceable. 131 S. Ct. 1740 (2011). Applying Concepcion, this Court, in Quevedo v. Macy's, Inc., recently enforced such a waiver. 798 F. Supp. 2d 1122, 1140–42 (C.D. Cal. 2011) (PAGA claims are subject to arbitration in light of Concepcion), reconsideration denied No. CV 09-01522 GAF

5

(MANx), 2011 WL 961598 (C.D. Cal. Oct. 31, 2011).  The Court acknowledges, without deciding, that Conception could bar Plaintiff from certifying a class and send her individual claims to arbitration.  Plaintiff states that this uncertainty, together with the unlikelihood that class members would individually pursue the novel claims asserted in this action, required her to compromise her claims for purposes of settlement.  (Mem. Final Settlement Approval at 15–16.)

The claims asserted in the FAC faced individual hurdles as well.  Plaintiff's claim under California Labor Code section 212 is premised on that statute's requirement that any instrument on which wages are issued must be printed with a California address where employees may obtain cash for their wages on demand, without paying a fee.  Cal. Lab. Code § 212(a)(1).  Plaintiff's FAC alleges that there is no way for Gamestop employees to receive 100 percent of their wages on demand using the Comdata paycards; instead, employees must pay a fee to withdraw their wages from an ATM, or to cash a check written on the paycard account.  (FAC ¶¶ 2, 8, 34; see Mem. Final Settlement Approval at 13.)  However, discovery in this action revealed that Gamestop was likely in compliance with the statute until mid-2010, when it discontinued its relationship with a large California supermarket chain that permitted employees to obtain their full wages, without fees, by swiping their paycards at the customer service counter.  (Mem. Final Settlement Approval at 13.)  Moreover, the termination of Gamestop's relationship with the supermarket chain was the result of a unilateral policy change by Comdata, not any action by Gamestop.  (Id. at 13–14)  In addition, Gamestop maintains that it has never violated the statute, because the Comdata paycard system has always permitted one fee-free withdrawal per pay period.  (Id. at 14, 17.)

Plaintiff's inadequate seating claim, brought under California Labor Code section 1198 and IWC Wage Order 2-2001 § 14, seeks PAGA penalties on the basis of Gamestop's failure to provide any seating on its retail sales floor.  (FAC ¶ 30.)  Plaintiff argues that, even if retail employees must move around the store during their workday, a seat may reasonably be accommodated at least while they work behind the register.

6

(Mem. Final Settlement Approval at 14.) However, Plaintiff believes that the likelihood of prevailing on the merits of this claim is far from certain, because it is a novel claim with no appellate authority on point. (Id. at 16.)

Plaintiff's claims face other challenges. She asserts that, because damage awards are discretionary, and because these are novel claims in relation to which limited authority has yet developed, it is far from certain that Plaintiff and the class would receive anywhere near the award sought in the FAC. (Id. at 17–18.) Lastly, Gamestop has argued that Plaintiff and the class are bound by two prior class action settlements that would bar their suit arising from any action before June 21, 2010. (Id. at 18.) Thus, despite class counsel's confidence in the merits of Plaintiff's legal position, class counsel determined that a settlement at this point in the litigation for the agreed upon sum and valuable injunctive relief is in the best interests of the class members, and "represents an excellent compromise." (Id. at 19.)

These factors reflect the complexity and uncertainty surrounding the class's claims. By negotiating the settlement, Plaintiffs avoid this uncertainty. This factor therefore weighs in favor of granting final approval.

### b. *The Risk, Expense, Complexity, and Likely Duration of Further Litigation*

The central factor relating to the "risk, expense, complexity, and likely duration" prong of the Torrisi analysis is the expense of litigation. Nat'l Rural Telecomms. Coop., 221 F.R.D. at 526. "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." Id. (quoting 4 A. Conte & H. Newberg, Newberg on Class Actions, § 11:50 at 155 (4th ed. 2002)).

Plaintiff points out that employment class actions are expensive and time-consuming to litigate, and, given the paucity of authority interpreting the Labor Codes at issue, "[t]his case presents a more difficult situation than most." (Mem. Final Settlement Approval at 19.) In addition, the settlement "avoids the need for a contested

7

and risky motion to compel individual arbitration and class certification motion," and, were the class to survive these motions, "a lengthy trial or trials that likely would have involved testimony by numerous witnesses and experts." (Id. at 20.) Continuing litigation would be costly and would result in substantial financial risk to both parties. (Id.) Thus, the risks and potential expenses to both sides from further litigation weigh in favor of final approval, consistent with the policy preferring settlement over further time-consuming litigation. Nat'l Rural, 221 F.R.D. at 525–26.

### c. *The Risk of Maintaining Class Action Status Through Trial*

As discussed, the settlement class faces a substantial risk that, should this case proceed without settlement, class members' claims would be compelled to individual arbitration. Approval of the settlement avoids this risk.

### d. *The Amount Offered in Settlement*

". . . [A] settlement should stand or fall on the adequacy of its terms." In re Corrugated Container Antitrust Litigation, 643 F.2d 195, 211 (5th Cir. 1981). The Court examines "the complete package taken as a whole, rather than the individual component parts," to determine whether the proposal is fair. Officers for Justice v. Civ. Serv. Comm'n of San Francisco, 688 F.2d 615, 628 (9th Cir. 1982).

Under the terms of the Settlement, the Maximum Settlement Amount is $750,000. It is proposed that amounts will be paid out of this fund as follows: (1) 25 percent of the fund ($187,500) is proposed to be paid in attorney fees; (2) $7,000 in court costs; (3) an estimated $55,000 in claims administration costs; (4) $15,000 for the individual Plaintiff's service enhancement award ($5,000) and general release payment ($10,000); and (5) a $68,000 payment to California's LWDA, representing 75 percent of the PAGA settlement amount of $90,666.67. (Mem. Final Settlement Approval at 4–6; Settlement Agreement ¶¶ 29, 53.) This leaves a Net Settlement Amount of approximately $417,500. Pursuant to the Settlement Agreement, however, if less than 35 percent of class members file claims, only 35 percent of the Net Settlement Amount (or $146,125) will be distributed pro rata to class members who have filed claims, and

the rest will remain the property of Gamestop. (Mem. Final Settlement Approval at 5; Settlement Agreement ¶¶ 53(E), 58.) To date, approximately 1,750 of the 22,449 notice recipients have filed claims, representing 7.80 percent of all notice recipients and 13.30 percent of all workweeks during the class period. (Mem. Final Settlement Approval at 1; Gaines Decl. ¶ 16; Molina Decl. ¶¶ 6, 8.)[2] Thus, each class member that has filed a claim will receive approximately $83.50, which is the equivalent of fees paid on 48 paycard withdrawals, at $1.75 per transaction. (Gaines Decl. ¶ 16.) Thus, the Settlement fairly compensates the claimants for the fees that may have been paid in order to access their wages. In addition, the Settlement Agreement will succeed in preventing future harm: Gamestop has agreed to amend its employment practices for a minimum of three years following the effective date of the agreement to (1) allow fee-free usage of paycards; and (2) provide at least two seats per California store, including one stool for the sales floor, regardless of whether California law is interpreted in the next three years to require lesser protections. (Mem. Final Settlement Approval at 6; Settlement Agreement ¶ 65.)

The Court concludes that the terms of the settlement are fair and weigh in favor of granting final approval. In particular, the Court finds nothing inappropriate about the Settlement Agreement's reversion provision, under which 65 percent of the Net Settlement Amount will revert to Gamestop because less than 35 percent of class members have filed claims. Indeed, "the Ninth Circuit has cautioned [that] 'reversion to the defendant may be appropriate when deterrence is not a goal of the statute or is not required by the circumstances." Harris v. Vector Marketing Corp., No. C–08–5198 EMC, 2011 WL 1627973, at *12 (N.D. Cal. Apr. 29, 2011) (quoting Six Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1308 (9th Cir. 1990)). The Labor Codes at issue in this case have a "deterrent goal," id., because civil penalties are

---

[2] Plaintiff observes that, "[w]hile the participation rate here is not substantial, it is consistent with a very young and transient workforce," and that "[o]ther class action settlements with GameStop employees evidence similar claims rates." (Mem. Final Settlement Approval at 23 (citing McHorney v. Gamestop Corp., No. CV09-2879 GHK (MANx) (claims rate of 6.3 percent)).

available for violations. See Cal. Lab. Code §§ 225.5 (providing for civil penalties for violations of section 212), 2699(f) (providing for civil penalties for violations of all Labor Code provisions for which no civil penalty is specifically established); Harris, 2011 WL 1627973, at *12. Here, however, Gamestop has agreed, pursuant to the terms of the Settlement Agreement, to rectify its offensive policies for at least three years following the effective date. The Court therefore concludes that "deterrence . . . is not required by the circumstances." Id. The amount offered in settlement represents a fair recovery to the class, and weighs in favor of granting final approval.

### *e. The Extent of Discovery Completed and the Stage of the Proceedings*

The amount of discovery completed affects approval of a stipulated settlement because it indicates whether the parties have had an "adequate opportunity to assess the pros and cons of settlement and further litigation." In re Cylink Sec. Litig., 274 F. Supp. 2d 1109, 1112 (N.D. Cal. 2003). Nevertheless, "[i]n the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." Linney, 151 F.3d at 1239 (quoting In re Chicken Antitrust Litig., 669 F.2d 228, 241 (5th Cir. 1982)).

Here, the parties engaged in informal discovery, exchanging data and documents and engaging in extensive discussions about their respective factual contentions and legal theories. (Mem. Final Settlement Approval at 3–4, 21; Gaines Decl. ¶¶ 10–12.) In July of 2011, they participated in 19 hours of determined mediation with an experienced mediator, and entered into the Settlement Agreement on September 7, 2011. (Mem. Final Settlement Approval at 4, 21; Gaines Decl. ¶¶ 11–12.) The Court is persuaded that the parties had sufficient information to make an informed decision about the settlement. This factor weighs in favor of final approval.

### *f. The Experience and Views of Counsel*

"'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." Nat'l Rural, 221 F.R.D. at 528 (quoting In re Painewebber Ltd. P'ships Litig., 171 F.R.D. 104, 125 (S.D.N.Y. 1997)). Furthermore, a presumption of fairness applies when settlements are negotiated at arm's length, because of the decreased chance of collusion between the negotiating parties. In re First Capital Holdings Corp. Fin. Prods. Secs. Litig., MDL Docket No. 901 (JGD), 1992 U.S. Dist. LEXIS 14337, at *5–6 (C.D. Cal. June 10, 1992).

In the present case, Plaintiff's counsel specializes in complex employment litigation and has been certified as class counsel in more than 25 similar class-action matters. (Gaines Decl. ¶ 5; Docket No. 27 [Daniel F. Gaines Decl.] ¶¶ 4–5.) Class counsel "believe[s] this Settlement to be an excellent result for Settlement Class Members." (Mem. Final Settlement Approval at 22.) Accordingly, this factor also weighs in favor of granting final approval.

### *g. The Presence of a Governmental Participant*

California's LWDA is a government entity affected by this action. Plaintiff has complied with statutory notice requirements prior to bringing her claim for PAGA penalties. (Mem. at 22; Gaines Decl. ¶ 43); see Cal. Lab. Code § 2699.3. Section 2699(I) provides that any civil penalties recovered under these provision shall be apportioned 75/25 between the agency and the aggrieved employees, as will occur in this case pursuant to the terms of the Settlement Agreement. See Cal. Lab. Code § 2699(I); (Mem. Final Settlement Approval at 5; Settlement Agreement ¶ 53D.) According, this factor weighs in favor of granting final approval.

### *h. The Reaction of Notified Class Members to the Proposed Settlement*

#### I. Notice Procedures

After the Court preliminarily approved the settlement, claims administrator ILYM Group mailed 22,449 notice packets containing the court-approved "Notice of Settlement of Class Action and Final Fairness Hearing," "Claim Form," and "Exclusion

Request Form" (collectively, "Notice Packets") to prospective members. (Molina Decl. ¶¶ 3–4, 6.) ILYM Group received the class data from Gamestop and checked for duplicates and other discrepancies. (Id. ¶ 4.) On December 16, 2011, it performed a National Change of Address search to update the addresses provided. (Id. ¶ 5.) On December 19, 2011, "Notice Packets were mailed via U.S. first-class mail to all 22,449 Class Members." (Id. ¶ 7.) Of the 2,110 Notice Packets that were returned by the Post Office, "64 had a forwarding address provided by the Post Office, to which ILYM Group re-mailed the Notice Packet to the forwarding address." (Id.) Thus, approximately 91 percent of Notice Packets were successfully delivered by U.S. mail. The Court concludes that this notice complied with this Court's 10/31/11 Order and also satisfies Federal Rule of Civil Procedure 23(c)(2)'s requirement that notice be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); (see 10/31/11 Order ¶ 4.).

### ii. Conclusion Regarding Class Reaction

As of February 13, 2012, "if approximately 30 late and deficient claims are accepted, ILYM Group will report a total of 1,750 valid claims, representing 7.80% of all class members and 13.30% of all workweeks." (Id. ¶ 8.) ILYM Group had also received 57 requests for exclusion, and no objections. (Id. ¶¶ 9–10.) "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of [the] proposed class settlement . . . are favorable to the class members." Nat'l Rural, 221 F.R.D. at 529. Notice regarding the proposed settlement has been widely disseminated to potential class members; none of the class members have objected; and only 57 of the 22,449 potential class members have opted out of the settlement. Thus, the Court concludes that the reaction of the class weighs in favor of granting final approval.

### 3. CONCLUSION RE: MOTION FOR FINAL APPROVAL

Based on the above analysis, the Court concludes that, on balance, the Torrisi

12

factors weigh in favor of granting final approval of the settlement agreement, because it is fundamentally fair, adequate, and reasonable. Accordingly, Plaintiff's motion for final approval is **GRANTED**.

### B. MOTION FOR ATTORNEY FEES, PLAINTIFF SERVICE ENHANCEMENT AWARD AND GENERAL RELEASE PAYMENT, AND COSTS

#### 1. ATTORNEY FEES

Plaintiff's counsel has separately moved for approval of their attorney fees in this matter. Circuit law teaches that class action plaintiffs' attorney fees may be based on a percentage recovery from a common fund. See Vizcaino v. Microsoft Corp., 290 F.3d 1043 (9th Cir. 2002); Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 272 (9th Cir. 1989); see also Torrisi, 8 F.3d at 1376. If an attorney seeks a percentage recovery, 25 percent of the common fund has been established as the "benchmark" award. Torrisi, 8 F.3d at 1376.

In Plaintiff's motion for preliminary approval, 25 percent of the Maximum Settlement Amount was allocated as attorney fees to class counsel. (Docket No. 20 [Mem. Prelim. Approval] at 5.) The Court preliminarily approved the Settlement Agreement, and stated that any request by class counsel for an award of fees or reimbursement of costs should be filed concurrently with a motion for final approval and "shall be accompanied by supporting evidence." (10/31/11 Order ¶ 10.) Plaintiff's counsel now moves for an award of attorney fees equal to 25 percent of the total settlement and submits supporting declarations and time records. (Docket No. 27 [Mem. Attorney Fees]; Gaines Decl. ¶¶ 61–67, Ex. D.) As the Court has recognized, the proposed settlement obtains a fair recovery for class members and includes a commitment by Gamestop to alter the complained-of policies for at least three years. In the absence of the settlement, class members face substantial hurdles to recovery. Moreover, a lodestar cross-check confirms that the fee award is reasonable. As of the date the motion was filed, counsel had expended 258 hours litigating this case and generated approximately $115,684.50 in fees at their usual and/or reasonable hourly

rates. (Gaines Decl. ¶¶ 61–67.) Plaintiff's counsel expects to spend 20 additional hours to finalize this case if final approval is granted. (Id. ¶ 62.)

Consistent with the Court's preliminary approval, the Court finds that Plaintiff's counsel has performed its expected duties as class counsel and concludes that the 25 percent fee award is reasonable and consistent with the established benchmark. The Court **GRANTS** Plaintiff's counsel's motion for fees.

### 2. INDIVIDUAL PLAINTIFF SERVICE ENHANCEMENT AWARD AND GENERAL RELEASE PAYMENT

Incentive awards are evaluated using "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir. 2003) (discussing plaintiff enhancement awards in wage-and-hour class action cases and quoting Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998)).

The named Plaintiff, Angela Church, requests a service enhancement of $5,000. (Mem. Fees and Service Award at 15.) Plaintiff devoted a great deal of time and effort assisting counsel throughout the course of this litigation. She "(1) assisted Counsel in investigating and substantiating the claims alleged in this action; (2) assisted in the preparation of the complaints; (3) produced evidentiary documents to Counsel; (4) actively participated in the informal discovery process; and (5) assisted in the settlement of this litigation, including attending the lengthy mediation." (Mem. Fees and Service Award at 16; see Gaines Decl. ¶¶ 54–56; Docket No. 27 [Church Decl.] ¶ 6.) In total, Plaintiff believes she spent "approximately 40 hours assisting [her] attorneys with the preparation of this case." (Church Decl. ¶ 7.) In addition, she faced the significant risk that, "in the event of judgment in favor of [Gamestop], she could have been personally liable for any costs awarded to them, in addition to the costs incurred by her counsel." (Gaines Decl. ¶ 56.) No objections were received from class members to the proposed enhancement award. (Mem. Fees and Service Award at 17.)

14

Plaintiff also seeks a payment of $10,000 from the Maximum Settlement Amount, which Gamestop has agreed to pay in exchange for her release of all claims against it. In addition to the claims asserted in this lawsuit, Plaintiff alleges that Gamestop wrongfully terminated and harassed her and denied her meal and rest periods. (Id. at 16–17; Settlement Agreement ¶ 53(B).) No objections were received to the proposed general release payment. (Mem. Fees and Service Award at 17.)

Under the circumstances, the Court finds that an enhancement service award of $5,000 and general release payment of $10,000 are reasonable in consideration of Plaintiff's efforts in securing a positive result for herself and her fellow class members, and her release of all individual claims against Gamestop. The Court **GRANTS** Plaintiff's motion that she be awarded a total of $15,000.

**3. COSTS**

When analyzing requests for expenses, courts are to consider whether the amounts "would normally be charged to a fee paying client." Trs. of Const. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co., 460 F.3d 1253, 1256 (9th Cir. 2006).

The Settlement Agreement provides for $7,000 as the maximum amount allocated for past, present, and future costs incurred by class counsel. Class Counsel has submitted evidence indicating that, as of February 13, 2012, it had expended $7,616.14 in actual costs litigating this case. However, counsel has agreed to request no more than $7,000. (Gaines Decl. ¶ 73; Ex. E [Class Counsel Expenses].) These expenses include CourtCall charges, filing and service fees, photocopy and printing costs, postage and FedEx charges, mediation fees and related expenses, and future expenses. (Class Counsel Expenses.) Consistent with the Court's preliminary approval, the Court holds that these costs are acceptable and **GRANTS** the motion for costs.

## III.
## CONCLUSION

Based on the foregoing, Plaintiff's motions for final settlement approval, attorney fees, costs, and enhancement and general release award and are **GRANTED**.

**IT IS SO ORDERED.**

DATED: March 12, 2012

_____
Judge Gary Allen Feess
United States District Court